**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**BORDEN'S, INC., Defendant.**

**No. Civ 81–19 PHX VAC.**

United States District Court,
D. Arizona.

Dec. 7, 1982.

---

7. "A foolish consistency is the hobgoblin of    small minds."

Francisco J. Flores, Jr., Ismael Alvarez, Ronald M. Andersen, E.E.O.C., Phoenix, Ariz., for plaintiff.

William R. Neale, Columbus, Ohio, for defendant.

## OPINION

CORDOVA, District Judge.

This action was brought by the Equal Employment Opportunity Commission (EEOC) against Borden's, Inc., a New Jersey corporation, for an alleged violation of the Age Discrimination in Employment Act

(ADEA), 29 U.S.C. Sec. 621 *et seq.* The case is now before the court on cross motions for summary judgment submitted upon a stipulation of facts and attached exhibits A through K.

The undisputed facts show that defendant Borden's closed its Phoenix, Arizona, dairy operation on December 31, 1979. The result of the closing was that all of the Dairy employees, excepting a few management personnel, were terminated. Effective July 27, 1979, prior to the dairy closing, Borden's had entered into a renewal of the collective bargaining agreements with the two unions[1] representing the dairy employees. By addenda executed in November, 1979, these agreements provided for severance pay in the event of closure. The severance pay formula therein created excluded all employees who were eligible for normal or early retirement[2]. To be eligible for retirement an employee had to have at least ten years of continuous service with Borden's and be at least fifty-five years of age. There were fourteen such employees excluded from receiving severance pay (eleven named in the original complaint and three plaintiff sought to add by untimely amendment)[3]. The record does not disclose that there were any employees over the age of fifty-five who did receive severance pay (exhibit G).

The issue before the court is whether Borden's denial of severance pay to those employees eligible for retirement constitutes an impermissible age based discrimination in violation of the ADEA. For the reasons given below, the court finds that it was.

29 U.S.C. Sec. 623(a)(1) provides:

It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; ...

Plaintiff EEOC claims Borden's severance pay policy violated this section. Plaintiff relies on either of the alternative theories that the policy represents discriminatory treatment of fifty-five year old employees, or that, if the policy is considered neutral on its face, it had a disparate impact on the fifty-five year old employees. Defendant Borden's argues that there was no violation because eligibility for retirement, not age, was the determining factor in the decision to deny severance pay. Borden's also claims that the severance pay policy was part of a bona fide employee benefit plan and is therefore exempt from the ADEA by virtue of 29 U.S.C. Sec. 623(f)(2).

## DISCRIMINATORY TREATMENT

■ Plaintiff contends that Borden's severance pay policy constitutes discriminatory treatment because the intent of the policy was to deny fifty-five year old employees severance pay. The only evidence of intent offered by the plaintiff, however, is an in-

---

1. Local 274, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers and Local 428, International Union of Operating Engineers.

2. The agreements with both unions had the same severance pay formula (exhibits F and J), the pertinent parts of which are:

1. In the event the company discontinues its Phoenix Dairy operations, i.e., "goes out of business" and in this case only, the Company will grant to the regular full time employees only, who have completed at least five (5) years of continuous service with the company, a severance pay allowance equivalent to two (2) days pay at the straight-time rate for each year of an employee's continuous service with the Company immediately prior to the Company's cessation of operations.

2. To be entitled to a severance pay allowance each of the following conditions must be complied with:

d. No severance pay will be paid to any employee who at the time of termination is eligible for a normal or early retirement pension under the provisions of either the Company's Employee Retirement Income Plan, or the Union's Pension Trust Plan, as applicable.

3. Vernon L. David, Lester Morgenthaler, Harold F. Otis, Lloyd E. Vann, Curtis Cousino, George Uselman, Leroy Castle, Oliver Allender, Dock Burditt, Albert Carrillo, French Barker. (Lewis Eikstaedt, Bernice Evans, and Ivory McBride were the employees who were sought to be added by untimely amendment.)

ference drawn from the result of defendant's policy. As the defendant points out, whether an employee received severance pay was determined by the employee's eligibility for retirement rather than the employee's age. Hypothetically, a fifty-five year old employee not eligible for retirement would receive severance pay. On its face then, defendant's severance pay policy is neutral. Therefore, the court finds that the facts do not establish plaintiff's claim of discriminatory treatment. Plaintiff's arguments are more properly considered under the disparate impact theory.

## DISPARATE IMPACT

■ As with discrimination claims brought under Title VII, ADEA violations may be established under either a discriminatory treatment or disparate impact theory[4]. *Douglas v. Anderson,* 656 F.2d 528 (9th Cir.1981); *Geller v. Markham,* 635 F.2d 1027 (2nd Cir.1980). In *International Bro. of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), the Supreme Court explained the distinction between the two theories:

> Claims of disparate treatment may be distinguished from claims that stress 'disparate impact.' The latter involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity... Proof of discriminatory motive, we have held, is not required under a disparate impact theory. Compare, e.g., *Griggs v. Duke Power Co.,* 401 U.S. 424, 430–432, 91 S.Ct. 849, 853–854, 28 L.Ed.2d 158, with *McDonnell Douglas v. Green,* 411 U.S. 792, 802–806, 93 S.Ct. 1817, 1824–1826, 36 L.Ed.2d 668. See generally B. Schlei & P. Grossman, Employment Discrimination Law 1–12 (1976); Blumrosen, Strangers in Paradise: *Griggs v. Duke Power Co.*

and the Concept of Employment Discrimination, 71 Mich.L.Rev. 59 (1972). Either theory may, of course, be applied to a particular set of facts. [97 S.Ct. at 1855 n. 15]

■ Defendant claims age was not the determining factor because under the severance pay policy, hypothetically, an employee fifty-five years of age who was not eligible for retirement would receive severance pay. This hypothetical possibility, however, remains just that: hypothetical. The evidence before the court (exhibit G) reveals that there were no fifty-five year old employees who in fact did receive severance pay. This goes to the essence of a disparate impact claim, i.e., that a facially neutral policy falls more harshly on one group than another. The court finds that to be the case here.

Basically, Borden's does not challenge the proposition that the impact of the severance pay policy fell more heavily on fifty-five year old employees. Instead, it is argued that the impact was not adverse. The primary thrust of Borden's defense is that those fifty-five year old employees who did not receive severance pay received something of greater value in its stead, retirement benefits. While there is little doubt that the retirement benefits are of greater value than the severance pay, Borden's attempts to characterize the situation as a choice between severance pay and retirement benefits is not supported by the evidence. Conversely, the evidence supports EEOC's claim that those employees eligible for retirement had vested rights to those benefits regardless of the existence of a severance pay policy. The eleven fifty-five year old employees named in this suit were adversely affected because they were forced to give up a newly created benefit given to other employees (severance pay) in exchange for benefits they already had (retirement).

---

4. "Title VII with respect to race, color, religion, sex, or national origin, and the ADEA with respect to age make it unlawful for an employer 'to fail or refuse to hire or to discharge any *individual,*' or otherwise to 'discriminate against any individual with respect to his com-

pensation, terms, conditions, or privileges of employment,' on any of those bases. 42 U.S.C. Sec. 2000e—2(a)(1); 29 U.S.C. Sec. 623(a)(1)." *Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978).

■ Under the disparate impact theory, once the plaintiff establishes an adverse disparate impact on a protected class, here employees over fifty-five, the employer may defend by showing that the challenged employment practice is justified by business necessity or need. *International Bro. of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *Geller v. Markham,* 635 F.2d 1027 (2nd Cir.1980). Defendant Borden's has adduced no evidence of business necessity. As was the case in *Nashville Gas Co. v. Satty,* 434 U.S. 136, 143, 98 S.Ct. 347, 352, 54 L.Ed.2d 356 (1977), a Title VII case where the Court said:

> But we agree with the District Court in this case that since there was no proof of any business necessity adduced with respect to the policy in question, that court was entitled to 'assume no justification exists.'

The defendant has articulated a nondiscriminatory reason for the challenged policy, i.e., to provide severance benefits to those terminated employees who were not otherwise provided for by retirement. While this reason might be a defense to a discriminatory treatment claim, *Douglas v. Anderson,* 656 F.2d 528 (9th Cir.1981), nondiscriminatory purpose is not the same as showing a business necessity. Such a defense (nondiscriminatory purpose) may show there was no improper motive, but as indicated by the Supreme Court in *Teamsters, supra,* improper motive is not an element of disparate impact claim.

The court finds that Borden's severance pay policy did have an adverse disparate impact on those employees over fifty-five years of age. The court also finds that there was no business necessity for this policy.

## EXCEPTION TO THE ADEA

■ Defendant makes the claim that its severance pay policy is exempt from the ADEA as provided in 29 U.S.C. Sec. 623(f)(2), which in pertinent part provides:

> It shall not be unlawful for an employer,
> . . .

> (2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this act . . .

It was held in *EEOC v. Home Ins. Co.,* 672 F.2d 252 (2nd Cir.1982), that:

> [t]he employer has the burden of proving that its age based actions fall within the exception provided by § 4(f)(2) [29 U.S.C. § 623(f)(2)]. *EEOC v. Eastern Airlines, Inc.,* 645 F.2d 69 (5th Cir.1981) . . . The § 4(f)(2) defense has three elements: (1) there must be a bona fide (retirement) plan, (2) the action must have been taken in observance of its terms, and (3) the retirement plan must not have been a subterfuge to evade the purposes of the ADEA [citations omitted].

The court finds that defendant has not met the burden of establishing the first of the three elements above.

Defendant argues that the severance pay policy was connected with the existing retirement plan in such a way so as to create a "coordinated benefit plan" which is exempted by (f)(2). Assuming defendant's retirement plan is a bona fide benefit plan under (f)(2), the record gives no indication that the severance pay policy is an integral part of it. There was no showing that the previously existing retirement plan was in any way reopened for negotiation when the severance pay policy was considered. As plaintiff points out, the retirement plan under which the employees who are the subject of this case already had vested rights, was independent of the severance pay policy. In *Alford v. City of Lubbock,* 664 F.2d 1263 (5th Cir.1982), it was found that the city's policy of denying accrued sick leave pay to city employees whose retirement was not covered by the state retirement plan, was not part of the bona fide employee benefit plan. The court stressed the independence of the sick pay policy from the state retirement plan as the reason why the city's policy was not covered by the Sec. 623(f)(2) exception. The same is true here. The severance policy was independent of the retirement plan. The mere fact that

the benefits available to employees under the retirement plan were considered when the severance pay formula was devised does not merge the two plans into a single "coordinated benefit plan." This is not to say that a bona fide employee benefit plan under (f)(2) could never include a severance policy such as the one here. The court does not find it necessary to rule on that question; the court here is only deciding that in this case the severance policy was not part of the retirement plan. The ADEA is a remedial statute and in accord with the general principle that exceptions to a remedial statute should be narrowly construed, *Sexton v. Beatrice Foods Co.*, 630 F.2d 478 (7th Cir.1980), the court concludes that the Sec. 623(f)(2) exception does not apply in this case.

REMEDY

The parties have agreed by stipulation (exhibit K) to the amounts of severance pay the eleven affected employees would have received under the severance pay formula. The EEOC seeks these amounts with interest. The EEOC also seeks injunctive relief pursuant to 29 U.S.C. Sec. 217 incorporated by 29 U.S.C. Sec. 626, enjoining Borden's from denying severance pay in similar circumstances in the future. Defendant requests that if judgment be found against it, that it not be required to pay interest. Borden's also claims that injunctive relief is neither appropriate nor necessary in this case.

The court finds that the affected employees named in the original complaint are entitled to the severance pay amounts listed in exhibit K. Prejudgment interest is also appropriate, *Kelly v. American Standard, Inc.*, 640 F.2d 974 (9th Cir.1981).

The court agrees with defendant that injunctive relief is not necessary. As the facts clearly show, defendant has terminated its Phoenix Dairy operation. The plaintiff is entitled to summary judgment as prayed for.