FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000806
23-FEB-2018
12:21 PM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---oOo---

DIANE CERVELLI and TAEKO BUFFORD,
Plaintiffs-Appellees,
vs.
ALOHA BED & BREAKFAST, a Hawai'i sole proprietorship,
Defendant-Appellant,
and
WILLIAM D. HOSHIJO, as Executive Director of the
Hawai'i Civil Rights Commission,
Plaintiff-Intervenor-Appellee.

NO. CAAP-13-0000806

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 11-1-3103)

FEBRUARY 23, 2018

NAKAMURA, CHIEF JUDGE, and FUJISE and REIFURTH, JJ.

OPINION OF THE COURT BY NAKAMURA, C.J.

Defendant-Appellant Aloha Bed & Breakfast (Aloha B&B) is owned and operated by Phyllis Young (Young) as a sole proprietorship. Aloha B&B provides lodging to transient guests, averaging between one hundred and two hundred customers per year. Plaintiffs-Appellees Diane Cervelli (Cervelli) and Taeko·Bufford (Bufford) (collectively, Plaintiffs), lesbian women in a

committed relationship, planned a trip to Hawaiʻi and sought lodging with Aloha B&B. Aloha B&B and Young refused to accommodate Plaintiffs' request for lodging based solely on their sexual orientation.

Plaintiffs filed a Complaint in the Circuit Court of the First Circuit (Circuit Court)[1] against Aloha B&B, alleging discriminatory denial of public accommodations in violation of Hawaii Revised Statutes (HRS) Chapter 489.[2] The Hawaiʻi Civil Rights Commission (HCRC) intervened in the case as a plaintiff, after it had determined that there was reasonable cause to believe that unlawful discriminatory practices had occurred.

Plaintiffs and the HCRC filed a partial motion for summary judgment on the issues of liability and injunctive relief, and Aloha B&B filed a competing cross-motion for summary judgment. The Circuit Court granted Plaintiffs and the HCRC's motion and denied Aloha B&B's motion. The Circuit Court ruled that Aloha B&B violated HRS § 489-3 by discriminating against the Plaintiffs on the basis of their sexual orientation. The Circuit Court also enjoined Aloha B&B from "engaging in any practices that operate to discriminate against same-sex couples as customers."

On appeal, Aloha B&B argues that the Circuit Court erred in ruling that it is liable for discriminatory practices under HRS Chapter 489. Aloha B&B maintains that because Aloha B&B operates its business out of Young's residence, the Circuit Court should have applied an exemption from prohibited

---

[1] The Honorable Edwin C. Nacino presided.

[2] HRS Chapter 489 is entitled "Discrimination in Public Accommodations." HRS § 489-3 (2008) provides:

> **Discriminatory practices prohibition.** Unfair discriminatory practices that deny, or attempt to deny, a person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation on the basis of race, sex, including gender identity or expression, sexual orientation, color, religion, ancestry, or disability are prohibited.

2

discriminatory practices in real property transactions set forth in HRS Chapter 515 for the rental of rooms by a resident. Alternatively, Aloha B&B argues that the application of HRS Chapter 489 to prohibit discriminatory practices under the circumstances of this case would violate Young's constitutional rights. Based on these arguments, Aloha B&B contends that the Circuit Court erred in granting Plaintiffs and the HCRC's motion for partial summary judgment and in denying Aloha B&B's motion for summary judgment. We affirm.

BACKGROUND

I.

Aloha B&B operates out of a four bedroom home in the Mariner's Ridge section of Hawai'i Kai, where Young and her husband reside. Young operates Aloha B&B as a sole proprietorship and offers three rooms in her residence to guests for overnight lodging. Rooms at Aloha B&B are offered at a nightly rate of $80 to $100, and there is a three-night minimum booking requirement. In addition to the nightly rate, Aloha B&B charges and collects general excise taxes from its customers as well as transient accommodation taxes, which only providers of transient accommodations are required to pay. Aloha B&B remits these taxes to the State of Hawai'i.

Aloha B&B does not offer rooms to customers for use as a permanent residence, and Young never describes herself as a landlord to her guests. Aloha B&B averages one hundred to two hundred customers per year. The median length of stay for Aloha B&B customers is four to five days. The majority of customers stay for less than a week, about 95 percent or more stay for less than two weeks, and more than 99 percent stay for less than a month. In addition to overnight lodging, customers at Aloha B&B are provided breakfast, pool access, wireless internet access, and other amenities. Almost all of Aloha B&B customers, an estimated 99 percent, are travelers who do not live in Hawai'i.

Aloha B&B advertises its services to the general public through its own website as well as through multiple third-party websites. Aloha B&B's website, freely accessible through the internet, provides a phone number and email address for potential customers to contact Aloha B&B, and it contains graphics stating "Best Choice Hawaii Hotel" and "Best Choice Oahu Hotels." Aloha B&B also advertises through various bed-and-breakfast-related websites to generate more business for itself, including paying an annual fee of between $400 to $500 to BedandBreakfast.com.

II.

Plaintiffs Cervelli and Bufford, two lesbian women in a committed relationship, began planning a trip to Hawai'i to visit a friend. Plaintiffs, who resided in California, wanted to stay near their friend, who lived in Hawai'i Kai. Cervelli emailed Aloha B&B to inquire if a room was available for their planned trip. Young responded by email the same day, stating that a room was available for six days and providing instructions on how to complete the reservation.

Two weeks later, Cervelli called Aloha B&B to book the reservation and spoke with Young, who indicated that the room was still available. While Young was writing up the reservation, Cervelli mentioned that she would be accompanied by another woman named "Taeko." Young stopped and asked whether Cervelli and her companion were lesbians. When Cervelli said "yes," Young responded, "[W]e're strong Christians. I'm very uncomfortable in accepting the reservation from you." Young refused to accept the reservation from Cervelli and terminated the phone call by hanging up.

Cervelli called Bufford in tears and explained what had happened. Bufford then called Young and attempted to reserve a room, but Young again refused to accept the reservation. Bufford asked Young if her refusal was because Bufford and Cervelli were lesbians, to which Young responded "yes." Bufford had two phone conversations with Young that day. Young referred to her religious beliefs in discussing her refusal to provide a room to

4

Plaintiffs. Apart from Plaintiffs' sexual orientation, there was no other reason for Young's refusal to accept Plaintiffs' request for a room.

III.

Cervelli and Bufford each filed a complaint against Aloha B&B with the HCRC alleging discrimination in public accommodations on the basis of sexual orientation. Young was interviewed during the HCRC's investigation and was asked to describe the religious beliefs that she claimed precluded her from accepting Cervelli and Bufford's reservation. Young stated that she is Catholic; that she believes that homosexuality is wrong; that she believes that sexual relations between same-sex couples (regardless of whether they are legally married) are immoral; and that she therefore refused to provide Cervelli and Bufford with a room. The HCRC found that there was reasonable cause to believe that Aloha B&B had committed an unlawful discriminatory practice against Cervelli and Bufford in violation of HRS § 489-3. The HCRC subsequently closed its cases based on Cervelli's and Bufford's election to pursue a court action, and it issued "right to sue" notices to Cervelli and Bufford.

IV.

Plaintiffs subsequently filed in the Circuit Court a Complaint for injunctive relief, declaratory relief, and damages against Aloha B&B, alleging discrimination on the basis of sexual orientation in violation of HRS Chapter 489. The HCRC filed a motion to intervene in the case as a plaintiff because it found the case was one of "general importance" given the HCRC's mission to eliminate discrimination. The Circuit Court granted the HCRC's motion to intervene as a plaintiff.

Plaintiffs and the HCRC filed a motion for partial summary judgment with respect to liability and injunctive relief.[3] Aloha B&B filed a cross-motion for summary judgment.

_____

[3] The only claim for which Plaintiffs and the HCRC did not seek summary judgment was the claim for damages in the Complaint.

5

The Circuit Court held a hearing on the parties' competing motions for summary judgment. At the hearing, counsel for Aloha B&B acknowledged that "discrimination is a horrible evil" and that "in places of public accommodation discrimination is a horrible evil." Aloha B&B's counsel also acknowledged that Aloha B&B admits that it "does provide lodging to transient guests."[4] However, Aloha B&B's counsel argued that the law prohibiting discrimination in public accommodations, HRS Chapter 489, does not apply to Aloha B&B because it uses Young's residence to provide lodging to transient guests. Aloha B&B's counsel argued that Aloha B&B's use of a residence means that it is not a "place of public accommodation" subject to the requirements of Chapter 489, but instead is governed by HRS Chapter 515.

The Circuit Court granted Plaintiffs and the HCRC's motion for partial summary judgment with respect to liability and declaratory and injunctive relief, and it denied Aloha B&B's cross-motion for summary judgment as moot. In its Summary Judgment Order,[5] the Circuit Court found that:

> [Aloha B&B] is governed by Chapter 489, HRS, not Chapter 515, HRS, and [Aloha B&B] constitutes a place of public accommodation under HRS § 489-2, because its goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the general public as customers, clients, or visitors. [Aloha B&B] also constitutes "[a]n inn, hotel, motel, or other establishment that provides lodging to transient guests" and "[a] facility providing services relating to travel or transportation." HRS § 489-2. [Aloha B&B] violated HRS § 489-3 by discriminating against Plaintiffs Diane Cervelli and Taeko Bufford on the basis of their sexual orientation as lesbians.

_____

[4] As discussed infra, HRS § 489-2 defines "place of public accommodation" to include "[a]n inn, hotel, motel, or other establishment that provides lodging to transient guests[.]"

[5] The Circuit Court's Order was entitled "Order Granting Plaintiffs' and [the HCRC's] Motion for Partial Summary Judgment for Declaratory and Injunctive Relief and Denying [Aloha B&B's] Motion for Summary Judgment," which we will refer to as the "Summary Judgment Order."

(Certain brackets in original.) The Circuit Court enjoined and prohibited "Defendant Aloha Bed & Breakfast, a Hawai'i sole proprietorship of Phyllis Young," and its officers, agents, and employees "from engaging in any practices that operate to discriminate against same-sex couples as customers of Aloha Bed & Breakfast[.]"

The Circuit Court entered its Summary Judgment Order on April 15, 2013. The parties subsequently submitted a stipulated application to file an interlocutory appeal from the Summary Judgment Order, which the Circuit Court granted.

DISCUSSION

I.

Aloha B&B argues that the Circuit Court erred in ruling that it is liable for discriminatory practices under HRS Chapter 489. Aloha B&B argues that it is not subject to HRS Chapter 489, but that its activities are governed by HRS Chapter 515. In particular, Aloha B&B asserts that an exemption from prohibited discriminatory practices in real property transactions set forth in HRS § 515-4(a)(2) protects it from liability in this case.

Plaintiffs and the HCRC, on the other hand, argue that Aloha B&B is clearly a place of public accommodation that is subject to HRS Chapter 489. Plaintiffs and the HCRC argue that Aloha B&B cannot "borrow" an exemption applicable to a different law (HRS Chapter 515) to avoid liability for violating the public accommodations law (HRS Chapter 489) on which Plaintiffs seek relief. They also argue that the HRS Chapter 515 exemption relied upon by Aloha B&B only applies to long-term living arrangements in which tenants are seeking permanent housing, and not to the short-term transient lodging provided by Aloha B&B to its customers.

As explained below, we conclude that the Circuit Court properly granted partial summary judgment in favor of Plaintiffs and the HCRC.

7

A.

The statutory provisions relevant to this appeal are as follows.

Plaintiffs' Complaint against Aloha B&B alleged discrimination on the basis of sexual orientation in public accommodations, in violation of HRS Chapter 489.  HRS § 489-3 provides:

> Unfair discriminatory practices that deny, or attempt to deny, a person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation on the basis of race, sex, including gender identity or expression, sexual orientation, color, religion, ancestry, or disability are prohibited.

HRS § 489-2 (2008) defines the terms "place of public accommodation" and "sexual orientation" for purposes of HRS Chapter 489, in relevant part, as follows:

> "Place of public accommodation" means a business, accommodation, refreshment, entertainment, recreation, or transportation facility of any kind whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the general public as customers, clients, or visitors.  By way of example, but not of limitation, place of public accommodation includes facilities of the following types:
>
> (1)  A facility providing services relating to travel or transportation; [or]
>
> (2)  An inn, hotel, motel, or other establishment that provides lodging to transient guests;
>
> . . . .
>
> "Sexual orientation" means having a preference for heterosexuality, homosexuality, or bisexuality, having a history of any one or more of these preferences, or being identified with any one or more of these preferences.

Aloha B&B argues that its activities are governed by HRS Chapter 515 and that it falls within the exemption from prohibited discriminatory practices set forth in HRS § 515-4(a)(2).  HRS § 515-3 (2006), provides in relevant part:

> It is a discriminatory practice for an owner or any other person engaging in a real estate transaction, or for a real estate broker or salesperson, because of race, sex, including gender identity or expression, sexual orientation,

8

color, religion, marital status, familial status, ancestry, disability, age, or human immunodeficiency virus infection:

(1)     To refuse to engage in a real estate transaction with a person;

. . . . [6/]

HRS § 515-4(a)(2) (Supp. 2011) provides:

(a) Section 515-3 does not apply:

. . .

(2)     To the rental of a room or up to four rooms in a housing accommodation by an owner or lessor if the owner or lessor resides in the housing accommodation. [7/]

HRS § 515-2 (2006) defines the terms "housing accommodation," "real estate transaction" and "real property" for purposes of HRS Chapter 515, in relevant part, as follows:

"Housing accommodation" includes any improved or unimproved real property, or part thereof, which is used or occupied, or is intended, arranged, or designed to be used or occupied, as the home or residence of one or more individuals.

. . . .

"Real estate transaction" includes the sale, exchange, rental, or lease of real property.

"Real property" includes buildings, structures, real estate, lands, tenements, leaseholds, interests in real estate cooperatives, condominiums, and hereditaments, corporeal and incorporeal, or any interest therein.

---

[6/] HRS § 515-3 identifies numerous other actions related to real estate transactions that constitute "discriminatory practice[s]."

[7/] At the time that Plaintiffs attempted to secure lodging with Aloha B&B, HRS § Section 515-4(a)(2) (2006) provided:

(a) Section 515-3 does not apply:

. . .

(2)     To the rental of a room or up to four rooms in a housing accommodation by an individual if the individual resides therein.

Although HRS § 515-4(a)(2) (2006) was subsequently amended, the differences between the pre-amended and post-amended statute are not material to our analysis in this case because Young was an owner/resident. For simplicity, we refer to the current version of the statute in our analysis.

The definition of "sexual orientation" in HRS § 515-2 is identical to the definition in HRS § 489-2.

B.

In rendering its decision, the Circuit Court construed provisions of HRS Chapter 489 and HRS Chapter 515. Statutory construction is a question of law, which we review de novo under the right/wrong standard. Lingle v. Hawai'i Gov't Empls. Ass'n, AFSCME, Local 152, AFL-CIO, 107 Hawai'i 178, 183, 111 P.3d 587, 592 (2005). In interpreting a statute, we are guided by the following well-established principles:

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.
>
> In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.
>
> This court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it to discover its true meaning. Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another.

Haole v. State, 111 Hawai'i 144, 149-50, 140 P.3d 377, 382-83 (2006) (block quote format altered; citation and brackets omitted).

C.

Having identified the statutory provisions at issue and the established principles for statutory interpretation, we proceed to consider the parties' statutory interpretation claims. We conclude that the Circuit Court properly ruled that there are no material facts in dispute and that Aloha B&B violated HRS

§ 489-3 by discriminating against Plaintiffs on the basis of their sexual orientation.

HRS § 489-3 prohibits "[u]nfair discriminatory practices that deny, or attempt to deny, a person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation on the basis of . . . sexual orientation . . . ." Aloha B&B admitted that the sole reason it refused to provide lodging to Plaintiffs was because of their sexual orientation. Young testified in her deposition that there was no other reason for Aloha B&B's refusal.

It is also clear based on the plain statutory language that Aloha B&B is a "place of public accommodation." That term is defined by HRS § 489-2 to mean "a business, accommodation, . . . recreation, or transportation facility of any kind whose goods, services, facilities, . . . or accommodations are extended, offered, sold, or otherwise made available to the general public as customers, clients, or visitors." Aloha B&B admitted in its responsive pretrial statement that "it offers bed and breakfast services to the general public." The evidence presented by Plaintiffs and the HCRC supports this admission. The evidence showed that Aloha B&B advertises and offers its services to the general public through its own website as well as through multiple third-party websites that are freely accessible over the internet; it makes its services available to a large number of customers, an average of between one hundred and two hundred per year; and aside from same-sex couples and smokers, it generally accepts anyone as a customer as long as the person is willing to pay and a room is available.

More importantly, the statutory definition of "place of public accommodation" specifically includes, "[b]y way of example, but not of limitation," "[a]n inn, hotel, motel, or other establishment that provides lodging to transient guests[.]"

HRS § 489-2 (emphasis added). Aloha B&B admitted that it "does provide lodging to transient guests." The undisputed evidence showed that Aloha B&B customers only stay for short periods of time -- the majority for less than a week and about 95 percent for less than two weeks. Aloha B&B does not offer rooms to customers for permanent housing or for use as a residence, and Young does not view herself as the landlord of the guests. In addition, Aloha B&B collects from its customers, and pays to the State, a transient accommodation tax, which only providers of transient accommodations are required to pay.

Based on Aloha B&B's own admissions as well as the undisputed evidence, we conclude that Aloha B&B falls squarely within the statutory definition of "place of public accommodation" as an "establishment that provides lodging to transient guests[.]" Our conclusion is bolstered by the stated purpose of HRS Chapter 489 and the Legislature's directive on how it should be construed. HRS § 489-1(a) (2006) states that the purpose of HRS Chapter 489 "is to protect the interests, rights, and privileges of all persons within the State with regard to access and use of public accommodations by prohibiting unfair discrimination." HRS § 489-1(b) (2006) then directs that HRS Chapter 489 "shall be liberally construed to further" these purposes.

When the plain language of the statutory definition of "place of public accommodation" is liberally construed to further the anti-discrimination purposes of HRS Chapter 489, it reinforces our firm conclusion that Aloha B&B is a place of public accommodation. We conclude that the Circuit Court correctly ruled that Aloha B&B constitutes a place of public accommodation that is subject to HRS Chapter 489. It is undisputed that Aloha B&B refused to provide Plaintiffs with lodging on the basis of their sexual orientation. Therefore, we affirm the Circuit Court's determination that Aloha B&B violated

HRS § 489-3 by discriminating against Plaintiffs on the basis of their sexual orientation.[8]

### D.

In arguing that its actions were not prohibited by HRS 489-3, Aloha B&B relies on an exemption applicable to a different law, HRS Chapter 515, a law which generally prohibits discrimination in real property transactions. In particular, Aloha B&B relies on the exemption set forth in HRS § 515-4(a)(2), a so-called "Mrs. Murphy" exemption.[9] HRS § 515-4(a)(2) provides that the prohibitions in HRS § 515-3 against discrimination in real estate transactions do not apply "[t]o the rental of . . . up to four rooms in a housing accommodation by an owner or lessor if the owner or lessor resides in the housing accommodation." Aloha B&B argues that the HRS § 515-4(a)(2) exemption supersedes the prohibition against discrimination set forth in HRS § 489-3 and therefore authorized its discriminatory conduct in this case. We disagree.

### 1.

In analyzing Aloha B&B's argument, we begin by focusing on our "foremost obligation . . . to ascertain and give effect" to the Legislature's intent in enacting the statutory provisions. As noted, through HRS § 489-1, the Legislature mandated that HRS Chapter 489 shall be liberally construed to further its purposes of protecting people's rights to access and to use public accommodations by prohibiting unfair discrimination. HRS Chapter 515 is also directed at prohibiting discrimination and "shall be

---

[8] Because we conclude that Aloha B&B falls within the statutory definition of "place of public accommodation" as "an establishment that provides lodging to transient guests," we need not address whether the Circuit Court was correct in determining that Aloha B&B also constitutes a place of public accommodation as "[a] facility providing services relating to travel or transportation." See HRS § 489-2.

[9] "Mrs. Murphy" was a hypothetical widow running a boarding house, whose circumstances were first cited in the 1960s to argue that a person renting a small number of rooms in the person's residence should be exempted from laws prohibiting discrimination.

construed according to the fair import of its terms and shall be liberally construed." HRS § 515-1 (2006).

By providing remedies for discrimination and the injuries caused by discrimination, HRS Chapter 489 and HRS Chapter 515 are remedial statutes.[10] "Remedial statutes are liberally construed to suppress the perceived evil and advance the enacted remedy." Flores v. United Air Lines, Inc., 70 Haw. 1, 12, 757 P.2d 641, 647 (1988) (internal quotation marks, citation, and brackets omitted). In addition, "exceptions to a remedial statute should be narrowly construed[.]" EEOC v. Borden's, Inc., 551 F.Supp. 1095, 1110 (D. Ariz. 1982); see State v. Russell, 62 Haw. 474, 479-80, 617 P.2d 84, 88 (1980) ("The importation of exceptions into statutes properly affected with a public interest is not lightly to be made. . . . It is a well settled rule of statutory construction that exceptions to legislative enactments must be strictly construed."); United States v. Columbus Country Club, 915 F.2d 877, 883 (1990) (construing exemptions to federal Fair Housing Act narrowly). Accordingly, we liberally construe the scope of the protection against discrimination provided by HRS Chapter 489, and we narrowly or strictly construe the scope of the exemption from prohibited discrimination provided by HRS § 515-4(a)(2).

The Hawai'i Legislature's actions in omitting a "Mrs. Murphy" exemption when it enacted HRS Chapter 489 indicates its intent that no such exemption would apply to discrimination in public accommodations and the type of conduct engaged in by Aloha B&B in this case. The "Mrs. Murphy" exemption in HRS Chapter 515 was enacted in 1967. See 1967 Haw. Sess. Laws Act 193, § 4 at 196. Almost twenty years later, the Hawai'i Legislature enacted HRS Chapter 489, which was patterned after the public

---

[10] See Flores v. United Air Lines, Inc., 70 Haw. 1, 12 n.8, 757 P.2d 641, 647 n.8 (1988) ("Generally, remedial statutes are those which provide a remedy, or improve or facilitate remedies already existing for the enforcement of rights and the redress of injuries." (internal quotation marks and citation omitted)).

accommodation provisions of the federal 1964 Civil Rights Act. See State v. Hoshijo ex rel. White, 102 Hawai'i 307, 317-18, 76 P.3d 550, 560 (2003). The federal public accommodation provisions contain the "Mrs. Murphy" exemption in the provision defining a "place of public accommodation" to include an "establishment which provides lodging to transient guests[.]" See 42 U.S.C. § 2000a(b)(1). Although the corresponding Hawai'i provision adopts portions of the federal provision word for word, the "Mrs. Murphy" exemption is conspicuously omitted from the Hawai'i provision.

A side by side comparison of the two provisions is as follows:

| Hawai'i Public Accommodations Law | Federal Public Accommodation Law |
| --- | --- |
| HRS § 489-2 defines a "place of public accommodation" to include:<br><br>"An inn, hotel, motel, or other establishment that provides lodging to transient guests[.]" | 42 U.S.C § 2000a(b)(1) defines a "place of public accommodation" to include:<br><br>"[A]ny inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence[.]" |

We conclude that the Hawai'i Legislature's omission of the "Mrs. Murphy" exemption in enacting HRS Chapter 489 provides persuasive evidence that it did not intend such an exemption to apply to establishments, like Aloha B&B, that provide lodging to transient guests. We also conclude that Congress' inclusion of the "Mrs. Murphy" exemption is instructive, for it demonstrates that Congress believed that a person's residence may constitute a "place of public accommodation" as an "establishment which provides lodging to transient guests." If a person's residence could not constitute a place of public accommodation, then the

15

"Mrs. Murphy" exemption would not be necessary in the federal public accommodation provision. Congress' inclusion of the "Mrs. Murphy" exemption in the federal public accommodation law supports our conclusion that a place of public accommodation includes a bed and breakfast business, like Aloha B&B, that uses the proprietor's residence to provide lodging to transient guests.

2.

Contrary to Aloha B&B, we do not view HRS Chapter 489 and HRS § 515-4(a)(2) to be in irreconcilable conflict. In this regard, we note that the term "rental" as used in HRS § 515-4(a)(2) is not specifically defined. Also, because HRS § 515-4(a)(2) is an exception to a remedial statute, we construe it narrowly. We conclude that it is possible to reconcile HRS Chapter 489 and HRS § 515-4(a)(2) by construing the phrase "rental of a room" for purposes of HRS § 515-4(a)(2) to exclude short-term lodging provided to transient guests covered by HRS Chapter 489 and as applying only to longer-term living arrangements where more permanent housing is sought. Such a construction would be consistent with the manner in which the Legislature has characterized the "Mrs. Murphy" exemption set forth in HRS § 515-4(a)(2).

In enacting the HRS § 515-4(a)(2) exemption in 1967, the Legislature referred to it as the "tight living" exemption. See H. Stand. Comm. Rep. No. 874, in 1967 House Journal, at 819. Furthermore, in amending HRS Chapter 515 in 2005 to add sexual orientation to the types of discrimination precluded by HRS § 515-3, the Legislature described the "Mrs. Murphy" exemption set forth in HRS 515-4(a)(2) as follows: "Housing laws presently permit landlords to follow their individual value systems in selecting tenants to live in the landlords' own homes[.]" 2005 Haw. Sess. Laws Act 214, § 1 at 688 (emphasis added). This characterization of the "Mrs. Murphy" exemption indicates that the Legislature understood the exemption to apply to longer-term

living or housing arrangements -- where a landlord-tenant relationship would be established. See State v. Sullivan, 97 Hawai'i 259, 266, 36 P.3d 803, 810 (2001) ("'[S]ubsequent legislative history or amendments' may be examined in order to confirm our interpretation of statutory provisions." (citation omitted)).

Here, Aloha B&B admitted that it provides lodging to transient guests and that no landlord-tenant relationship is established during the guests' short-term stays. Construing the phrase "rental of a room" for purposes of HRS § 515-4(a)(2) to exclude short-term lodging provided to transient guests and as applying only to longer-term living arrangements would serve the Legislature's purposes for enacting both HRS Chapter 489 and HRS § 515-4(a)(2). It would advance the Legislature's goal of prohibiting discrimination in public accommodations, while permitting landlords "to follow their individual value systems" in selecting a tenant who will reside with them on a longer-term basis in their own homes. This construction would also avoid any irreconcilable conflict between HRS Chapter 489 and HRS § 515-4(a)(2). See State v. Vallesteros, 84 Hawai'i 295, 303, 933 P.2d 632, 640 (1997) ("[W]here the statutes simply overlap in their application, effect will be given to both if possible, as repeal by implication is disfavored." (block quote format and citation omitted)).

3.

But even if there were an irreconcilable conflict between HRS Chapter 489 and HRS § 515-4(a)(2), we conclude that Chapter 489 would control as it is the more specific statute with respect to Aloha B&B and Aloha B&B's actions that are at issue in this case. See id. ("[W]here there is a 'plainly irreconcilable' conflict between a general and a specific statute concerning the same subject matter, the specific will be favored." (block quote format and citation omitted)). The plain language of HRS Chapter 489 specifically applies to and governs an "establishment that

17

provides lodging to transient guests." See HRS § 489-2. This language perfectly describes Aloha B&B. HRS Chapter 489 also directly addresses the precise conduct at issue in this case -- the discriminatory refusal by a public accommodation establishment to provide lodging to transient guests based on their sexual orientation. See HRS § 489-3. HRS § 515-4(a)(2), on the other hand, applies more generally to the "rental of rooms," without specifying the time period involved or whether the provision of lodging to transient guests is covered. We conclude that HRS Chapter 489 is the more specific statute regarding the subject matter of this case.[11]/

II.

We now turn to address Aloha B&B's constitutional claims. Aloha B&B contends that the application of HRS Chapter 489 to its conduct in this case would violate Young's constitutional rights to privacy, intimate association, and free exercise of religion. We disagree.

We review "questions of constitutional law *de novo*, under the right/wrong standard," and we "answer questions of constitutional law by exercising [our] own independent judgment based on the facts of the case. Malahoff v. Saito, 111 Hawai'i

---

[11]/ Contrary to Aloha B&B's contention, the doctrine of *ejusdem generis* does not support its claim that it falls outside the definition of a "place of public accommodation." See Richardson v. City and County of Honolulu, 76 Hawai'i 46, 74, 868 P.2d 1193, 1221 (1994) (Klein, J., dissenting) (describing the doctrine of *ejusdem generis* to mean: "[W]here words of general description follow the enumeration of certain things, those words are restricted in their meaning to objects of like kind and character with those specified."). The doctrine is inapplicable where the statute's plain meaning is apparent or where applying the *ejusdem generis* rule would conflict with other, clearer indications of the Legislature's intent. United States v. West, 671 F.3d 1195, 1199 (10th Cir. 2012); Leslie Salt Co. v. United States, 896 F.2d 354, 359 (9th Cir. 1990). As we have concluded, the plain language of HRS Chapter 489 and the Legislature's directive that it be liberally construed to further its anti-discrimination purposes clearly establishes that Aloha B&B falls within the definition of a "place of public accommodation." In any event, Aloha B&B's claim that the *ejusdem generis* doctrine supports its claim because a bed and breakfast operates out of a residence while an inn, hotel, and motel do not is without merit. The trait that unifies the items in the list is set forth in the statutory definition itself -- establishments "that provide[] lodging to transient guest." It is undisputed that Aloha B&B possesses this unifying trait.

168, 181, 140 P.3d 401, 414 (2006) (citation and brackets omitted). "[E]very enactment of the [Hawai'i] [L]egislature is presumptively constitutional, and a party challenging the statute has the burden of showing [the alleged] unconstitutionality beyond a reasonable doubt." State v. Mueller, 66 Haw. 616, 627, 671 P.2d 1351, 1358 (1983). The alleged constitutional violation "should be plain, clear, manifest, and unmistakable." Kaho'ohanohano v. State, 114 Hawai'i 302, 339, 162 P.3d 696, 733 (2007).

A.

Aloha B&B argues that applying HRS Chapter 489 to prohibit it from discriminating against Plaintiffs and others based on their sexual orientation violates Young's right to privacy. We disagree.

The "evil of unequal treatment, which is the injury to an individual's sense of self-worth and personal integrity" is "the chief harm resulting from the practice of discrimination by establishments serving the general public." King v. Greyhound Lines, Inc., 656 P.2d 349, 352 (Or. Ct. App. 1982), cited in Hoshijo ex rel. White, 102 Hawai'i at 317 n.22, 76 P.3d at 560 n.22. Unfair discriminatory practices in general, and such practices in places of public accommodation in particular, "deprive[] persons of their individual dignity and den[y] society the benefits of wide participation in political, economic, and cultural life." Roberts v. United States Jaycees, 468 U.S. 609, 625 (1984).

Hawai'i has a compelling state interest in prohibiting discrimination in public accommodations. "[A]cts of invidious discrimination in the distribution of publicly available goods, services, and other advantages cause unique evils that government has a compelling interest to prevent[.]" Id. at 628. A State's interest in assuring equal access is not "limited to the provision of purely tangible goods and services," and a State has broad authority to create rights of public access. Id. at 625.

19

Aloha B&B argues that the right to privacy is "the right to be left alone." However, to the extent that Young has chosen to operate her bed and breakfast business from her home, she has voluntarily given up the right to be left alone. In choosing to operate Aloha B&B from her home, Young, for commercial purposes, has opened up her home to over one hundred customers per year, charging them money for access to her home. Indeed, the success of Aloha B&B's business and its profits depend on members of the general public entering Young's home as customers. In other words, the success of Aloha B&B's business requires that Young not be left alone.

Aloha B&B also argues that the right to privacy has special force in a person's own home. However, given Young's choice to use her home for business purposes as a place of public accommodation, it is no longer a purely private home. "The more an owner, for [her] advantage, opens [her] property for use by the public in general, the more do [her] rights become circumscribed by the statutory and constitutional rights of those who use it." State v. Viglielmo, 105 Hawaiʻi 197, 206, 95 P.3d 952, 961 (2004) (internal quotation marks and citation omitted). In addition, the State retains the right to regulate activities occurring in a home where others are harmed or likely to be harmed. See State v. Kam, 69 Haw. 483, 492, 748 P.2d 372, 378 (1988); Mueller, 66 Haw. at 618-19, 628, 671 P.2d at 1353-54, 1359 (finding no privacy right to engage in prostitution in one's home). Aloha B&B's discriminatory conduct caused direct harm to Plaintiffs and threatens to harm other members of the general public.

The privacy right implicated by this case is not the right to exclude others from a purely private home, but rather the right of a business owner using her home as a place of public accommodation to use invidious discrimination to choose which customers the business will serve. "The Constitution does not guarantee a right to choose employees, customers, suppliers, or

20

those with whom one engages in simple commercial transactions, without restraint from the State."  Roberts, 468 U.S. at 634 (O'Connor, J., concurring).  We conclude that Young's asserted right to privacy did not entitle her to refuse to provide Plaintiffs with lodging based on their sexual orientation and that the application of HRS Chapter 489 to prohibit such discriminatory conduct does not violate her right to privacy. See Mueller, 66 Haw. at 618-19, 628, 671 P.2d at 1353-54, 1359.

B.

Aloha B&B claims that applying HRS Chapter 489 to prohibit it from denying accommodations to Plaintiffs and others based on their sexual orientation violates Young's constitutionally protected right to intimate association.  We disagree.

In recognizing the constitutional right of intimate association, the Supreme Court "has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme."  Roberts, 468 U.S. at 617-18.  "[C]ertain kinds of personal bonds have played a critical role in the culture and traditions of the Nation by cultivating and transmitting shared ideals and beliefs[.]"  Id. at 618-19.  The right of intimate association protects family relationships and similar highly personal relationships, which "by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life."  Id. at 619-20. The protected relationships "are distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship."  Id. at 620. Conversely, an association lacking these qualities, "such as a large business enterprise," are not protected.  Id.

21

The Supreme Court specifically referred to family relationships to exemplify and to suggest limitations on the kinds of relationships entitled to constitutional protection. Id. at 619. The factors relevant for a court to consider in determining whether a particular relationship is entitled to protection are "the group's size, its congeniality, its duration, the purposes for which it was formed, and the selectivity in choosing participants." IDK, Inc. v. Clark County, 836 F.2d 1185, 1193 (9th Cir. 1988).

Considering these factors, we conclude that applying HRS Chapter 489 to Aloha B&B does not violate Young's right to intimate association. The relationship between Aloha B&B and the customers to whom it provides transient lodging is not the type of intimate relationship that is entitled to constitutional protection against a law designed to prohibit discrimination in public accommodations.

With respect to the group's size, Aloha B&B provides transient lodging to between one hundred and two hundred customers per year. Aloha B&B has accommodated customers in up to three rooms at a time for twenty years. The hundreds of customer relationships Aloha B&B forms through its business is far from the "necessarily few" family-type relationships that are subject to constitutional protection. See Roberts, 468 U.S. at 620-21 (holding that relationships formed through membership in business groups with 400 and 430 members were not protected); IDK, 836 F.2d at 1193 (concluding that while an escort and a client "are the smallest possible association[,]" this relationship was not protected because, among other reasons, an escort may have many other clients, and the relationship "lasts for a short period and only as long as the client is willing to pay the fee").

With respect to the purpose for which the relationship is formed, Aloha B&B forms relationships with its customers for commercial, business purposes, and it is only the commercial aspects of the relationship that HRS Chapter 489 regulates.

22

Young testified that the primary purpose of Aloha B&B is to "make money." She also admitted that if she could not make money by running Aloha B&B, she "wouldn't operate it." Young does not operate Aloha B&B for the purpose of developing "deep attachments and commitments" to its customers. See id. at 620.

With respect to selectivity, duration, and congeniality, Aloha B&B generally is not selective about whom it will accept as customers, provides short-term, transient lodging, and does not form lasting relationships with customers. With narrow exceptions such as same-sex couples and smokers, Aloha B&B basically provides lodging to "any member of the public who is willing to pay." Aloha B&B does not inquire into the background of its prospective customers, such as their political or religious beliefs, before allowing them to book a reservation.[12] Aloha B&B's customers only stay for short periods of time. The majority stay for less than a week, about 95 percent less than two weeks, and over 99 percent less than a month. While Young stated that "people come as guests and leave as friends," she acknowledged that she had difficulty putting customers' "faces to the name" a month after they left.

Aloha B&B and Young's relationship with customers arising from the commercial operation of Aloha B&B does not constitute an intimate, family-type relationship that involves "deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." Roberts, 468 U.S. at 620. Applying HRS Chapter 489 to prohibit the discriminatory conduct

---

[12] While Young stated that she will not accept reservations from smokers, same-sex couples, unmarried couples, and disabled people who cannot climb the stairs, Young stated that the standard questions she asks people in processing a reservation consists of the dates they want, whether they are smokers, what room they are asking about, requesting their names, addresses, and contact information, asking if they have any dietary needs, and asking about the deposit. Therefore, based on her standard questions, Young would not be able to determine the customers' marital status or whether they are able to climb stairs.

23

engaged in by Aloha B&B in this case does not violate Young's right to intimate association.

C.

Aloha B&B contends that application of HRS Chapter 489 to its conduct in this case violates Young's constitutional right to free exercise of religion. We disagree.

The Free Exercise Clause of the First Amendment, which is applicable to the States through the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const., amend. I. (emphasis added). The protections of the Free Exercise Clause apply to laws that target religious beliefs or religiously motivated conduct. Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 532-34 (1993). However, the Supreme Court has held that "the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" Employment Div., Dept. of Human Resources of Ore. v. Smith, 494 U.S. 872, 879 (1990) (citation omitted). In Smith, the Supreme Court further held that neutral laws of general applicability need not be justified by a compelling governmental interest even when they have the incidental effect of burdening a particular religious practice. Id. at 882-85.[13]

---

[13] The Supreme Court explained:

The government's ability to enforce generally applicable prohibitions of socially harmful conduct, like its ability to carry out other aspects of public policy, "cannot depend on measuring the effects of a governmental action on a religious objector's spiritual development." To make an individual's obligation to obey such a law contingent upon the law's coincidence with his religious beliefs, except where the State's interest is "compelling" -- permitting him, by virtue of his beliefs, "to become a law unto himself," -- contradicts both constitutional tradition and common sense.

Smith, 494 U.S. at 885 (citations and footnote omitted).

24

Under <u>Smith</u>, to withstand a challenge based on the Free Exercise Clause of the First Amendment, a neutral state law of general applicability that has the incidental effect of burdening a particular religious practice need not be justified by a compelling state interest, but need only satisfy the rational basis test.[14] Aloha B&B does not dispute that HRS Chapter 489 is a neutral law of general applicability. However, it argues that we should depart from <u>Smith</u>, impose a compelling state interest requirement, and apply strict scrutiny in deciding its free exercise claim under the Hawai'i Constitution.[15]

We need not decide whether a higher level of scrutiny should be applied to a free exercise claim under the Hawai'i Constitution than the United States Constitution. This is because we conclude that HRS Chapter 489 satisfies even strict scrutiny as applied to Aloha B&B's free exercise claim. To satisfy strict scrutiny, a statute must further a compelling state interest and be narrowly tailored to achieve that interest. <u>Nagle v. Board of Education</u>, 63 Haw. 389, 392, 629 P.2d 109, 111 (1981) ("Under the strict scrutiny standard . . . [a] court will carefully examine a statute to determine whether it furthers compelling state interests and is narrowly drawn to avoid unnecessary abridgment of constitutional rights."); <u>Kolbe v.</u>

_____

[14] In response to the Supreme Court's decision in <u>Smith</u>, Congress passed the Religious Freedom Restoration Act of 1993 (RFRA), which prohibits government from substantially burdening the exercise of religion, even through a neutral law of general applicability, unless the government can show that the law was in furtherance of a compelling government interest and was the least restrictive means of furthering that interest. <u>See City of Boerne v. Flores</u>, 521 U.S. 507, 515-16 (1997). In <u>City of Boerne</u>, however, the Supreme Court invalidated the RFRA as it applied to the States. <u>Id.</u> at 511, 536. Thus, with respect to state laws, the <u>Smith</u> standard generally applies to claims under the Free Exercise Clause of the First Amendment. <u>See Korean Buddhist Dae Won Sa Temple of Hawaii v. Sullivan</u>, 87 Hawai'i 217, 246 & n.31, 953 P.2d 1315, 1344 & n.31 (1998).

[15] Similar to the United States Constitution, the Hawai'i Constitution provides: "No law shall be enacted respecting the establishment of religion, or <u>prohibiting the free exercise thereof</u> . . . ." Haw. Const. art I, § 4 (emphasis added).

Hogan, 849 F.3d 114, 133 (4th Cir. 2017) (en banc) ("To satisfy strict scrutiny, . . . the challenged law [must be] 'narrowly tailored to achieve a compelling governmental interest.'" (citation omitted)).

In evaluating Aloha B&B's free exercise claim under the Hawai'i Constitution, we balance the burden HRS Chapter 489 imposes on Young's free exercise of religion against the State's interest in prohibiting discrimination in public accommodations. See Korean Buddhist Dae Won Sa Temple of Hawaii v. Sullivan, 87 Hawai'i 217, 246, 953 P.2d 1315, 1344 (1998). To establish a prima facie case for its free exercise claim, Aloha B&B must show that HRS Chapter 489 interferes with a religious belief that is sincerely held by Young and imposes a substantial burden on Young's religious interests. See id. at 247, 953 P.2d at 1345.

Aloha B&B asserts that based on Young's religion, she believes that sexual relations between individuals of the same sex are immoral; that providing a room to a same-sex couple would serve to facilitate conduct she believes is immoral; and thus requiring her to provide lodging to Plaintiffs and other same-sex couples would impose substantial burdens on her free exercise of religion. Plaintiffs have not challenged the sincerity of Young's religious beliefs, but argue that Aloha B&B cannot show a substantial burden on Young's religion. Plaintiffs argue that Young's religious beliefs do not compel her to operate a bed and breakfast business. They also assert that Young can still use her home to generate income without any alleged conflict between her religious beliefs and the law by relying on the "Mrs. Murphy" exemption in HRS Chapter 515 and renting out rooms to tenants seeking long-term housing.

Assuming, without deciding, that Aloha B&B established a prima facie case of substantial burden to Young's exercise of religion, we conclude that the application of HRS Chapter 489 to

Aloha B&B's conduct in this case satisfies the strict scrutiny standard. As previously discussed, Hawai'i has a compelling state interest in prohibiting discrimination in public accommodations. The Hawai'i Legislature has specifically found and declared that "the practice of discrimination because of . . . sexual orientation . . . in . . . public accommodations . . . is against public policy." HRS § 368-1 (2015). Discrimination in public accommodations results in a "stigmatizing injury" that "deprives persons of their individual dignity" and injures their "sense of self-worth and personal integrity." Roberts, 468 U.S. at 625; King, 656 P.2d at 352, cited in Hoshijo ex rel. White, 102 Hawai'i at 317 n.22, 76 P.3d at 560 n.22. Aloha B&B itself has acknowledged that "in places of public accommodation discrimination is a horrible evil."

HRS Chapter 489 is narrowly tailored to achieve Hawai'i's compelling interest in prohibiting discrimination in public accommodations. See Roberts, 468 U.S. at 626 (holding that Minnesota, in applying its public accommodations statute to prohibit the Jaycees from discriminating against women, advanced its interest "through the least restrictive means of achieving its ends"). HRS Chapter 489 "responds precisely to the substantive problem [of discrimination in public accommodations] which legitimately concerns the State." Id. at 629 (internal quotation marks and citation omitted). Because the application of HRS Chapter 489 to Aloha B&B's discriminatory conduct in this case satisfies even strict scrutiny, Aloha B&B is not entitled to relief on its free exercise claim.[16]

---

[16] We reject Aloha B&B's claim that Plaintiffs' Complaint should have been dismissed for failing to name Young, who it maintains is an indispensable party, as a defendant. Aloha B&B is operated as a sole proprietorship with Young as its sole proprietor. "[I]n the case of a sole proprietorship, the firm name and the sole proprietor's name are but two names for one person." Credit Assocs. of Maui, Ltd. v. Carlbom, 98 Hawai'i 462, 466, 50 P.3d 431, 435 (App. 2002) (block quote format and citation omitted).

CONCLUSION

Based on the foregoing, we affirm the Circuit Court's Summary Judgment Order.

On the briefs:

Shawn A. Luiz
James Hochberg
for Defendant-Appellant

Joseph P. Infranco
Joseph E. La Rue
(Alliance Defending Freedom)
for Defendant Appellant

Jay S. Handlin
Linsay N. McAneeley
(Carlsmith Ball LLP)
Peter C. Renn
(Lambda Legal Defense and
    Education Fund, Inc.)
For Plaintiffs-Appellees

Robin Wurtzel
Shirley Naomi Garcia
April L. Wilson-South
(Hawai'i Civil Rights Commission)
for Plaintiff-Intervenor-Appellee

*Craig H. Nakamura*

*Alexa D. M. Fujise*

*Lawrence M. Reifurth*