50 P.3d 431

**CREDIT ASSOCIATES OF MAUI, LTD., a Hawai'i corporation, Plaintiff–Appellant,**

v.

**Cosco E. CARLBOM aka Casco E. Carlbom, individually and dba Aloha Screens, Defendant–Appellee.**

No. 23798.

Intermediate Court of Appeals of Hawai'i.

June 26, 2002.

Lynn A.S. Araki, on the briefs, for plaintiff-appellant.

BURNS, C.J., WATANABE, and LIM, JJ.

Opinion of the Court by WATANABE, J.

In this assumpsit case, Plaintiff–Appellant Credit Associates of Maui, Ltd. (Credit Associates) challenges the September 26, 2000 judgment of the District Court of the Second Circuit (the district court),[1] which awarded Credit Associates $3,077.79 against Aloha Screens, a sole proprietorship, but declined to hold Defendant–Appellee Cosco E. Carlbom, also known as Casco E. Carlbom (Carlbom), the sole proprietor of Aloha Screens, personally liable for the debts of Aloha Screens.

Because a sole proprietorship has no legal identity apart from its owner, we vacate the district court's judgment and remand with instructions that the district court enter a judgment holding Carlbom personally liable to Credit Associates for the debts of Aloha Screens.

## BACKGROUND

On March 28, 2000, Credit Associates filed the underlying lawsuit against Carlbom, individually and doing business as Aloha Screens, seeking, in relevant part,[2] to recover $3,077.79 for unpaid telephone and other services provided to Aloha Screens. The evidence adduced at trial revealed that Aloha Screens entered into an oral contract with GTE Hawaiian Telephone Company, now known as Verizon Hawaii (Verizon), for telephone services and "GTE Directory Advertising."[3] Although Aloha Screens did make payments on some monthly bills invoiced by Verizon in 1997 and 1998, by May 21, 1998, Aloha Screens owed $3,077.79 in unpaid bills to Verizon. Verizon subsequently assigned its right to collect on this debt to Credit Associates.

Carlbom admitted at trial that he was the owner and sole proprietor of Aloha Screens, a sole proprietorship company that he formed in 1984. He also admitted that he was familiar with the four telephone numbers for which Aloha Screens owed Verizon $3,077.79 in unpaid bills, because "[t]hose were [Aloha Screens'] phone numbers." Based on these admissions, Credit Associates' attorney argued that Carlbom should be held personally liable for the debts of Aloha Screens. The following colloquy between Credit Associates' attorney and the district court then occurred:

THE COURT: ... This is an age old problem....

You can look at it two ways. One, you can take the position that you've taken, heh, this guy is, in fact, Aloha Screens and he's using the phone. All right.

There is another way to look at it and it's this, the phone company has been in business for a long time and what did they do when they opened this account? ...

... Did they go to [Carlbom] and say, you can have a phone and you can use it in your business if you want to, you sign right here. They didn't do that.

... What did they do? It seems to me that they took their chances with Aloha Screen[s], which was a dumb thing to do. Aloha Screen[s], what is that? It's nothing, it's a legal nothing and they chose to put—

[CREDIT ASSOCIATES' ATTORNEY]: But, Your Honor, a sole proprietorship, this is a sole proprietorship.

THE COURT: Yes, it is. And it is a sole proprietorship owned by [Carlbom]. [Carlbom], if you give him a pen and tell him to sign his name, he'll do it. If he doesn't do it, then you don't give him a phone.

[CREDIT ASSOCIATES' ATTORNEY]: Your Honor, under the rules, ...

---

1. The Honorable John T. Vail entered the judgment and presided over the proceedings that led to the entry of the judgment.

2. The complaint also alleged that Defendant–Appellee Cosco E. Carlbom, also known as Casco E. Carlbom (Carlbom), individually and doing business as Aloha Screens, owed Maui Electric Company, Ltd. the sum of $22.69. Maui Electric Company, Ltd. assigned its debt to Plaintiff–Appellant Credit Associates (Credit Associates), and

Carlbom apparently paid Credit Associates the $22.69 after being served with the complaint.

3. The bills Aloha Screens received from GTE Hawaiian Telephone Company, now known as Verizon Hawaii, that were introduced into evidence at trial reveal that an $869.70 monthly fee for directory advertising comprised over eighty percent of Aloha Screens' monthly bill.

he has provided absolutely no testimony to support his defense. He did not basically say that, oh, I don't believe I owe it, because I didn't sign anything—

. . . .

THE COURT: He doesn't have to prove the case, you have to prove the case.

[CREDIT ASSOCIATES' ATTOR-NEY]: Under the [Public Utilities Commission (PUC)] Rules, Your Honor, ... PUC requires that the customer, when a service is asked for to a phone company, that they not be required to go into Phone Mart, into the telephone company directly to sign any documentation. Basically, a phone call is all that is necessary.

THE COURT: I'll listen to what you have to say, but if you have your witness, bring him back and certainly, I'll listen. It certainly does seem that if you want to give a phone to [Carlbom], you can do it, but you didn't give a phone to him, you gave it to Aloha Screens.

Thereafter, a Verizon Customer Contact Center supervisor was recalled to the stand. He testified that a business "would just need to call to establish phone service" with Verizon; it was not necessary to sign any form to get telephone service. He also indicated, however, that he was not aware of any PUC rule that would prohibit Verizon from requiring a business to sign documentation to obtain telephone service. Moreover, upon further questioning by the district court, the Verizon supervisor admitted that he did not know of any papers which Carlbom had signed directly, agreeing to be responsible for telephone services provided by Verizon to Aloha Screens.

The district court then orally ruled in favor of Carlbom, based on the following reasoning:

There has to be some documentation for the fact that [Carlbom] is responsible for that bill. Now, it may be that while he

was running the business, his thinking was that money for the payment of the bill would come out of monies paid to [Aloha] Screens, and it didn't.

Again, the common practice in any business, if you're doing business with a sole proprietorship, is to get a signature by the proprietor. If you don't have that, you end up with a business relationship with nothing. Aloha Screens is legally nothing. If you have Aloha Screens, Inc., you can get a judgment against Aloha Screens.

Aloha Screens is nothing, it's a legal nothing, the phone company did not go into business yesterday, they know this the same way I do, and sure, maybe he's the fellow using the phone, all they had to do was say, sign right here, otherwise, we won't give you a phone.

Your position does not change the fundamentals of the law. You have no contract with [Carlbom]. I'm going to find for [Carlbom] and I thank you, very much.

Thereafter, on September 26, 2000, the district court entered a judgment in favor of Credit Associates "and against ALOHA SCREENS only for the principal amount of THREE THOUSAND SEVENTY[-]SEVEN AND 79/100 DOLLARS ($3,077.79)." The judgment also awarded Credit Associates fees and costs totaling $115.70. Following the filing of a notice of appeal by Credit Associates on October 3, 2000, the district court entered Findings of Fact and Conclusions of Law[4] that determined, in relevant part, as follows:

*FINDINGS OF FACT*

. . . .

3. On or about May 21, 1998, for services received, "Aloha Screens" became indebted to GTE Hawaiian Telephone in the sum of THREE THOUSAND SEVEN-

4. Rule 52 of the District Court Rules of Civil Procedure provides, in relevant part, as follows:
   **FINDINGS BY THE COURT.**
   . . . .
   **(c) When Judgment is Appealed.** Whenever a notice of appeal is filed and findings of fact and conclusions of law have not been made, unless such findings and conclusions are un-

necessary as provided by subdivision (a) of this rule, the court shall find the facts specially and state separately its conclusions of law thereon. Notwithstanding the filing of the notice of appeal, the court shall retain jurisdiction to make and file such findings and conclusions and to amend the judgment to conform thereto, if deemed necessary.

TY[-]SEVEN DOLLARS AND SEVEN-TY–NINE CENTS ($3,077.79).

. . . .

5. An oral agreement was formed whereby "Aloha Screens" promised to pay for telephone services provided by Verizon under the account number 999–900–7217. Evidence was adduced that Verizon provided such services to "Aloha Screens" for nearly 5 years.

6. [Carlbom] was the sole proprietor of Aloha Screens. The sole proprietorship is no longer in existence.

. . . .

8. Although [Credit Associates] has made demand upon [Carlbom] [i]ndividually and dba "Aloha Screens" for payment of the sums due to Verizon, [Carlbom] has continued to fail, neglect, and/or refuse to pay the same.

9. *Despite Aloha Screens being a sole proprietorship, and despite [Carlbom] admitting being the owner of said sole proprietorship, the agreement of service was made between "Aloha Screens" and Verizon and not between [Carlbom] and Verizon.*

. . . .

12. [Credit Associates] presented no evidence as to who requested the [telephone] service on behalf of Aloha Screens, nor who agreed to pay for it.

### CONCLUSIONS OF LAW

. . . .

3. Despite the sole proprietorship of "Aloha Screens" by [Carlbom] is [sic] not personally liable for the debt incurred from services rendered by Verizon because Verizon did not have an agreement with [Carlbom] acknowledging personal liability of the debt. This is so because there was no evidence that [Carlbom] requested the above service in [sic] behalf of Aloha Screens, nor that he agreed to pay for it. That being the case, the [c]ourt concludes that [Credit Associates] was satisfied to deal with "Aloha Screens".

4. Judgment is rendered against Aloha Screens only for the principal amount of THREE THOUSAND SEVENTY[-]SEV-

EN DOLLARS AND 79/100 CENTS ($3,077.79).

(Emphasis added.) On October 12, 2000, Credit Associates filed an Amended Notice of Appeal.

### DISCUSSION

The district court specifically found that an "oral agreement was formed whereby 'Aloha Screens' promised to pay for telephone services provided by Verizon[.]" The district court also found that "Carlbom was the sole proprietor of Aloha Screens." Nevertheless, the district court concluded that "Carlbom is not personally liable for the debt incurred from services rendered by Verizon because Verizon did not have an agreement with [Carlbom] acknowledging personal liability of the debt. This is so because there was no evidence that [Carlbom] requested the above service in [sic] behalf of Aloha Screens, nor that he agreed to pay for it."

For the following reasons, and in light of the district court's findings, we hold that the district court was wrong when it concluded that Carlbom was not liable for the debt incurred from services rendered by Verizon to Aloha Screens.

### A.

First, a sole proprietorship has no legal identity apart from its owner. Black's Law Dictionary 1392 (6th ed.1990) defines "sole proprietorship" as

> [a] form of business in which one person owns all the assets of the business in contrast to a partnership, trust or corporation. The sole proprietor is solely liable for all the debts of the business.

Similarly, one legal treatise has observed:

> The basic disadvantages of the sole proprietorship arise from the complete identity of the business entity with the individual doing business. In contrast with the limited-liability characteristic of a corporation or limited partnership, the liabilities of the business venture are the personal liabilities of the individual proprietor. The financial risk of the sole proprietor is not limited to the amount invested in the business but encompasses all of his [or her] assets.

1 Z. Cavitch, *Business Organizations* § 1.04, at 1–22 (2002).

Although no Hawai'i case has explicitly recognized the foregoing rule regarding the liability of a sole proprietor, other jurisdictions have. In *State v. ABC Towing*, 954 P.2d 575, 577–78 (Alaska Ct.App.1998), for example, the Alaska Court of Appeals held:

> At common law, sole proprietorships are not "legal entities". Neither are partnerships.... Rather, sole proprietorships and partnerships are deemed to be merely the alter egos of the proprietor or the partners (as individuals). In a sole proprietorship, all of the proprietor's assets are completely at risk, and the sole proprietorship ceases to exist upon the proprietor's death....
>
> ....
>
> With regard to a sole proprietorship, Alaska law deems the "company" to be simply an alter ego of the proprietor, who is engaged in commerce under a *nom d'affaires*—an assumed name adopted for business purposes. See *Roeckl v. Federal Deposit Insurance Corp.*, 885 P.2d 1067 (Alaska 1994), which contains a lengthy discussion of an individual's legal ability to conduct business or business transactions under an assumed name. *Roeckl* notes that, unless a person uses a fictitious business name in order to facilitate a fraud, it has always been legal for a person to transact business in the name of a fictitious entity that has no legal existence apart from the individual(s) running the business.

Similarly, the Illinois Supreme Court has stated:

> It is well settled that a sole proprietorship has no legal identity separate from that of the individual who owns it. The sole proprietor may do business under a fictitious name if he or she chooses. However, doing business under another name does not create an entity distinct from the person operating the business. The individual who does business as a sole proprietor under one or several names remains one person, personally liable for all his or her obligations.

*Vernon v. Schuster*, 179 Ill.2d 338, 228 Ill. Dec. 195, 688 N.E.2d 1172, 1176–77 (1997).

In *Bishop v. Wilson Quality Homes*, 986 P.2d 512, 514–15 (Okla.1999), the Oklahoma Supreme Court noted:

> This [c]ourt has long held that in the case of a sole proprietorship, the firm name and the sole proprietor's name are but two names for one person. *National Surety Co. v. Oklahoma Presbyterian College for Girls*, 38 Okla. 429, 132 P. 652, 654 (1913). In the Syllabus by the [c]ourt, the [c]ourt observed "Where a person engages in business and executes contracts under such name, he may be sued under such name." *National Surety Co.*, 132 P. at 654. Doing business under another name does not create an entity distinct from the person operating the business. The individual who does business as a sole proprietor under one or several names remains one person, personally liable for all his obligations.... "The individual who does business as a sole proprietor under one or several names remains one person, personally liable for all his [or her] obligations." *Duval v. Midwest Auto City, Inc.*, 425 F.Supp. 1381, 1387 (D.Neb.1977).
>
> ....
>
> "One doing business in a trade name has fair notice that a complaint alleging a cause of action arising out of his business may lead to personal liability." *Hughes v. Cox*, 601 So.2d 465, 471 (Ala.1992). Wilson Quality Homes is merely a trade name, and a judgment against the trade name is the same as a judgment against the individual, sole proprietor.

(Brackets omitted.) *See also Ladd v. Scudder Kemper Invs., Inc.*, 433 Mass. 240, 741 N.E.2d 47, 50 (2001) (citing Black's Law Dictionary for the proposition that a "sole proprietor is solely liable for all the debts of the business").

In this case, the district court specifically found that Aloha Screens was indebted to Verizon pursuant to an "oral agreement" and that Carlbom "was the sole proprietor of Aloha Screens." Because a sole proprietorship cannot "conduct business" on its own and Aloha Screens was essentially a trade

name[5] under which Carlbom operated, Carlbom was, pursuant to the authority discussed above, personally liable for the $3,077.79 debt owed by Aloha Screens to Verizon. The district court incorrectly concluded otherwise.

## B.

At trial, the district court orally ruled that Verizon's failure to obtain Carlbom's signature on a written contract for telephone services provided to Aloha Screens was fatal to Credit Associates' attempt to recover from Carlbom any debt owed by Aloha Screens. For the following reasons, we conclude that the district court erred in so ruling.

### 1.

■ First, it is well settled that "[a] contract need not be in writing unless a statute requires it. Conversely, an oral or parol contract is unenforceable where a statute requires it to be in writing." 17A Am. Jur.2d *Contracts* § 181, at 193 (1991) (footnote omitted). The Hawai'i Statute of Frauds, Hawaii Revised Statutes (HRS) § 656-1 (1993), sets forth the circumstances under which a contract is required to be in writing. It provides as follows:

**Certain contracts, when actionable.** No action shall be brought and maintained in any of the following cases:

(1) To charge a personal representative, upon any special promise to answer for damages out of the personal representative's own estate;

(2) To charge any person upon any special promise to answer for the debt, default, or misdoings of another;

(3) To charge any person, upon an agreement made in consideration of marriage;

(4) Upon any contract for the sale of lands, tenements, or hereditaments, or of any interest in or concerning them;

(5) *Upon any agreement that is not to be performed within one year from the making thereof;*

(6) To charge any person upon any agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or commission;

(7) To charge the estate of any deceased person upon any agreement which by its terms is not to be performed during the lifetime of the promisor, or, in the case of agreements made prior to July 1, 1977, of an agreement to devise or bequeath any property, or to make any provision for any person by will; or

(8) To charge any financial institution upon an agreement by the financial institution to lend money or extend credit in an amount greater than $50,000;

*unless the promise, contract, or agreement, upon which the action is brought, or*

---

5. At the time the underlying lawsuit was filed, Hawaii Revised Statutes (HRS) § 482-2(b) (Supp.2001) provided, partly, as follows:

**Certificate.** ...

(b) ... Before any person may receive a certificate of registration of a ... trade name, the person shall file in the office of the director [of commerce and consumer affairs] an application for the registration thereof, with a declaration, certified, as aforesaid, stating that the person is the sole and original proprietor of the ... trade name, or the assign of the proprietor and setting forth the nature of the business in which the ... trade name is used. HRS § 482-2(b) will be revised effective July 1, 2003. At the time the underlying action was brought, the term "trade name" was defined in HRS § 482-1 (1993) as follows: " 'Trade name' means a word or name used by a person to identify the person's business, vocation or occupation and distinguished it from the business, vocation or occupation of others." Effective July 1, 2003, this definition will change. *See* HRS § 482-1 (Supp.2001).

Additionally, HRS § 482-3(a) (Supp.2001) provided, in part, as follows:

**Record, issuance and effect of certificate.** (a) Upon receiving the application accompanied by the fee, the director of commerce and consumer affairs shall cause the ... trade name to be recorded and shall issue to the applicant a certificate of registration under the seal of the director; and the certificate of registration shall be constructive notice to all persons of the applicant's claim of the use of the ... trade name throughout the State, for the term of one year from the date thereof.... *The acceptance of an application and issuance of a certificate of registration by the director shall not abrogate or limit any common law or other right of any person to any ... trade name* [.]

(Emphasis added.) The legislature has thus recognized the continued vitality of the common law right of any person to have a trade name.

*some memorandum or note thereof, is in writing, and is signed by the party to be charged therewith, or by some person thereunto by the party in writing lawfully authorized.* The term "financial institution" used in [paragraph] (8) means an institution domiciled in this State whose deposits are federally insured or a financial institution which is examined and supervised by the commissioner of financial institutions.

(Emphases added, brackets in original.) The Hawai'i Statute of Frauds "is substantially the same as the original English Statute of Frauds[,]" which "was enacted almost 300 years ago to prevent 'many fraudulent practices, which are commonly endeavored to be upheld by perjury and subornation of perjury'." *McIntosh v. Murphy,* 52 Haw. 29, 32–33, 469 P.2d 177, 179 (1970). The only subsection of HRS § 656–1 that arguably required a contract between Verizon and Aloha Screens to be in writing is subsection (5), which states that "any agreement that is not to be performed within one year from the making thereof" shall be in writing. The test for determining the applicability of subsection (5) of HRS § 656–1, the counterpart of subdivision 5 of section 4 of the original Statute of Frauds, "is not how long the performance will take, but when will it be complete." J. Calamari & J. Perillo, *The Law of Contracts* § 19.17, at 743 (4th ed.1998). As Professors Calamari and Perillo point out,

[t]he one year section of the Statute of Frauds has never been a favorite of the courts; it has been interpreted in such a way as to narrow its scope as much as possible. Thus, it[ ] has been interpreted to mean that it only applies to a promise or agreement which by its terms does not admit of performance within one year from the time of its making. If by its terms, performance is possible within one year, however unlikely or improbable that may be, the agreement or promise is not within this subdivision of the Statute of Frauds. Thus a promise made in October 1920 to cut down and deliver certain timber on or before April 1, 1922 is not within the Statute. It is immaterial whether or not the actual period of performance exceeded one year. The same is true of a promise to build a house within fifteen months. A promise to perform on completion of a dam is not within the Statute although it is contemplated that the dam will be completed in three years and in fact completion takes three years.

*Id.* § 19.18, at 743–44 (footnotes omitted). In this case, there is no indication that Aloha Screens contracted with Verizon for telephone and other services that could not be performed within a year from the making of the contract. Rather, the bills for services provided by Verizon to Aloha Screens indicate that Aloha Screens was provided basic telephone, long distance, directory advertising, and other services on a month-to-month basis and billed for such services monthly.

The Maine Supreme Judicial Court considered an analogous situation in *Estate of Saliba v. Dunning,* 682 A.2d 224 (Me.1996). In that case, a new tenant of a warehouse building orally agreed to lease space in the warehouse and pay rent of $1,500.00 on the first of each month. Although the tenant made monthly rental payments through August 1992, the tenant made no payments from September 1992 through July 1993, when the tenant's business failed and the tenant vacated the warehouse. Sued for back rent, the tenant raised a statute of frauds defense, which the Maine court rejected. The court held that a month-to-month oral contract for the lease of a warehouse "*can be* performed in less than a year, *is not* a contract for the sale of land and does not even remotely implicate any of the other categories of agreements requiring a writing pursuant to the Statute of Frauds to be enforceable." *Id.* at 227 (italicized emphases in original).

### 2.

■ Second, the general rule is that

[i]n the absence of a statute requiring a signature or an agreement that the contract shall not be binding until it is signed, *parties may become bound by the terms of a contract, even though they do not sign it,* where their assent is otherwise indicated, *such as by the acceptance of benefits under the contract, or the acceptance by one of the performance by the other.*

17A Am.Jur.2d *Contracts* § 185, at 195–96 (1991) (emphases added, footnotes omitted). The Hawai'i Supreme Court has expressed this rule as follows: "Performance or part performance of a contract required to be in writing will take the matter out of the statute of frauds, where the party seeking to enforce it has acted to his [or her] detriment in substantial reliance upon the oral agreement." *Shannon v. Waterhouse*, 58 Haw. 4, 5–6, 563 P.2d 391, 393 (1977).

In this case, Carlbom acknowledged that four telephone numbers listed on Verizon's invoices to Aloha Screens were for telephones furnished by Verizon for Aloha Screens' business. Since Aloha Screens accepted the benefits of the telephone and other services provided by Verizon in substantial reliance on Aloha Screens' oral agreement to pay for services executed, Aloha Screens and its sole proprietor, Carlbom, are liable for the cost of said services.

### 3.

Finally, Hawai'i Rules of Civil Procedure Rule 8(c) provides that a statute of frauds defense must be "set forth affirmatively[.]" As this court has previously stated:

> The defense of the statute [of frauds] is a personal one which may undoubtedly be waived by the defendant, and unless he [or she] sets up the statute and relies on it by some proper pleading, he [or she] thereby impliedly waives the objection that the contract was not in writing. Under the generally prevailing rule that an oral contract within the statute of frauds is not void or illegal, but merely voidable, and that the statute affords a defense personal to the party sought to be charged, which cannot be availed of by anyone else, the defense of the statute may be waived by the party entitled thereto, as by failure to raise the objection by proper pleading, objection to evidence, or otherwise in accordance with the prevailing local practice.

*Lee v. Kimura*, 2 Haw.App. 538, 545, 634 P.2d 1043, 1048 (1981) (internal quotation marks and citations omitted). Neither Aloha Screens nor Carlbom mentioned a statute of frauds defense, either below or on appeal. The defense was therefore waived.

### CONCLUSION

For the foregoing reasons, we conclude that the district court was wrong when it held that Carlbom was not liable for the debts of Aloha Screens. Accordingly, we vacate the district court's judgment and remand this case with instructions that the district court enter a new judgment that holds Carlbom liable for the debts of Aloha Screens.