**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000375
04-JUN-2020
07:52 AM**

NO. CAAP-18-0000375
(Consolidated with CAAP-18-0000492)

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


**CAAP-18-0000375**
VIDA GARCIA, Claimant-Appellee,
v.
JANIS FERNANDEZ, dba EXODUS BAIL BOND,
Employer-Appellant,
and
SPECIAL COMPENSATION FUND,
Insurance Carrier-Appellee


**CAAP-18-0000492**
VIDA GARCIA, Claimant-Appellee-Appellee,
v.
JANIS FERNANDEZ, dba EXODUS BAIL BOND,
Employer-Appellee,
and
SPECIAL COMPENSATION FUND,
Insurance Carrier-Appellant


APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2016-301; DCD NO. 2-15-08619)


SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Chan and Hiraoka, JJ.)

Janis Fernandez dba Exodus Bail Bond (Ms. Fernandez),
self-represented, appeals from a March 29, 2018 Decision and
Order (D&O) by the Labor and Industrial Relations Appeals Board

(LIRAB).[1]  In relevant part, the LIRAB held that Vida Garcia (Garcia) sustained a work injury to her right knee on October 1, 2014, while in the employ of Ms. Fernandez, and that Ms. Fernandez had failed to secure workers' compensation insurance in accordance with Hawaii Revised Statutes (HRS) § 386-123.  The LIRAB penalized Ms. Fernandez $1,290.00 for failing to secure workers' compensation insurance, payable to the Special Compensation Fund (SCF).

SCF appeals from the D&O and the LIRAB's Order Denying Motion for Reconsideration filed May 18, 2018.[2]  On July 11, 2018, this court granted SCF's motion to consolidate CAAP-18-0000375 and CAAP-18-0000492 under CAAP-18-0000375.

On appeal, Ms. Fernandez argues[3] that her husband, Frank Fernandez (Mr. Fernandez), was the owner of Exodus Bail Bond, and that the LIRAB erred in determining that she was the owner of Exodus Bail Bond and Garcia's employer by: (1) failing to take judicial notice of documents related to proceedings revoking Mr. Fernandez's insurance producer license and law license, which Ms.

---

[1]  This appeal was designated CAAP-18-0000375.

[2]  This appeal was designated CAAP-18-0000492.

[3]  Ms. Fernandez's Opening Brief does not comply with Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 28(b) because it fails to: include appropriate record references; identify where in the record the alleged error occurred and was objected to or brought to the attention of the agency; and cite the authorities, statutes, and parts of the record relied on.  Violations of HRAP Rule 28(b) raise the potential for dismissal of the appeal and/or waiver of issues sought to be raised. Bettencourt v. Bettencourt, 80 Hawaiʻi 225, 230, 909 P.2d 553, 558 (1995); HRAP Rule 30 ("When the brief of an appellant is otherwise not in conformity with these rules, the appeal may be dismissed[.]"); HRAP Rule 28(b)(3), (4), (7).  Nonetheless, we address Ms. Fernandez's points of error to the extent they can be discerned because the Hawaiʻi appellate courts have "consistently adhered to the policy of affording litigants the opportunity 'to have their cases heard on the merits, where possible.'" Morgan v. Planning Dep't, 104 Hawaiʻi 173, 180-81, 86 P.3d 982, 989-90 (2004) (quoting O'Connor v. Diocese of Honolulu, 77 Hawaiʻi 383, 386, 885 P.2d 361, 364 (1994)); see Wagner v. World Botanical Gardens, Inc., 126 Hawaiʻi 190, 193, 268 P.3d 443, 446 (App. 2011) (stating that in light of an appellant's status as a self-represented litigant, this court would address his arguments on appeal to the extent they could be reasonably discerned).

Fernandez asserts mention Mr. Fernandez and not her in relation to Exodus Bail Bond; (2) failing to further question Mr. Fernandez at the hearing about those documents and whether he was the owner of Exodus Bail Bond; and (3) citing evidence not produced at the hearing in paragraphs "g"-"n" of the Summary of the Evidence subsection in the D&O.[4]

SCF contends on appeal that the LIRAB erred in determining that Ms. Fernandez was in violation of HRS § 386-123 for the period of October 1, 2014, to February 6, 2015, and penalizing her in the amount of $1,290.00. SCF argues that Garcia was employed from January 24, 2014, to February 6, 2015, and should have been penalized pursuant to HRS § 386-123 according to that period.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Ms. Fernandez's and SCF's points of error as follows.

> It is axiomatic that we are "under an obligation to ensure that we have jurisdiction to hear and determine each case and to dismiss an appeal on our own motion where we conclude we lack jurisdiction." BDM, Inc. v. Sageco, Inc., 57 Haw. 73, 73, 549 P.2d 1147, 1148 (1976). "When we perceive a jurisdictional defect in an appeal, we must, *sua sponte*, dismiss that appeal." Familian N[.W.], Inc. v. Cent. Pac. Boiler & Piping, Ltd., 68 Haw. 368, 369, 714 P.2d 936, 937 (1986).

---

[4] Ms. Fernandez also argued in her Reply Brief that this court should take into consideration or take judicial notice of the Complaint filed in Frank M. Fernandez, Frank M. Fernandez dba Exodus Bail Bond and Exodus Bail Bond L.L.C. v. Eric A. Seitz and Ronald N.W.B. Kim, Civil No. 19-1-0216-02, on February 7, 2019, in the Circuit Court of the First Circuit (Complaint). The Complaint does not appear in the record, HRS § 641-2 ("Every appeal shall be taken on the record, and no new evidence shall be introduced in the [appellate] court."), and is a matter outside of the scope of the answering brief, in violation of HRAP Rule 28(d). Further, the Complaint is composed of mere allegations and does not amount to facts "either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." See Hawaii Rules of Evidence Rule 201. Based on the foregoing, we decline to consider or judicially notice the assertions contained in the Complaint.

Brooks v. Dana Nance & Co., 113 Hawaiʻi 406, 412, 153 P.3d 1091, 1097 (2007) (original brackets omitted) (quoting Bacon v. Karlin, 68 Haw. 648, 650, 727 P.2d 1127, 1129 (1986)).

As a threshold matter, we address whether Ms. Fernandez may pursue this appeal as self-represented, and thus whether we have appellate jurisdiction. We note that exhibits in the record indicate that both "Exodus Bail Bond, LLC" (the LLC) and the trade name "Exodus Bail Bond" were apparently in active existence at the time Garcia worked for "Exodus Bail Bond" and at the time of the injury at issue. We have previously held in a separate and unrelated case that Ms. Fernandez, a non-attorney, was not permitted to file an opening brief on behalf of Exodus Bail Bond, LLC. State v. Mezurashi, No. CAAP-11-0000638, 2013 WL 2149684, at *1 n.1 (Haw. App. May 16, 2013) (SDO) (citing Oahu Plumbing & Sheet Metal, Ltd., 60 Haw. 372, 377, 590 P.2d 570, 573-74 (1979); and HRS §§ 605-2, 605-14). Here, however, the party in interest has consistently been named as the sole proprietorship of "Janis Fernandez, dba Exodus Bail Bond," including in Conclusion of Law (COL) 1 in the D&O. Furthermore, at the LIRAB hearing, Ms. Fernandez's attorney and Mr. Fernandez stated that the LLC and the sole proprietorship doing business under the trade name Exodus Bail Bond were separate entities and Ms. Fernandez's attorney stated several times that the issue of concern is whether Ms. Fernandez was an employer in regards to the sole proprietorship and not the LLC. Ms. Fernandez may self-represent the sole proprietorship on appeal. See Cervelli v. Aloha Bed & Breakfast, 142 Hawaiʻi 177, 193 n.16, 415 P.3d 919, 935 n.16 (App. 2018) ("In the case of a sole proprietorship, the firm name and the sole proprietor's name are but two names for one person." (brackets and citation omitted)); Credit Associates of Maui, Ltd. v. Carlbom, 98 Hawaiʻi 462, 465, 50 P.3d 431, 434 (App. 2002) ("[A] sole proprietorship has no legal identity apart from its owner."); see also United States v. Hagerman, 545 F.3d 579, 581 (7th Cir. 2008) ("A sole proprietorship may litigate *pro se*

4

because it has no legal identity separate from the proprietor[.]" (citations omitted)); Dutch Vill. Mall v. Pelletti, 256 P.3d 1251, 1254 (Wash. Ct. App. 2011) ("'Unlike a sole proprietorship, a sole member limited liability company is a distinct legal entity that is separate from its owner;' such a company may appear in federal court only through a licensed attorney." (quoting and citing Lattanzio v. COMTA, 481 F.3d 137, 140 (2d Cir. 2007)). We thus have jurisdiction to review Ms. Fernandez's appeal.

The LIRAB's Finding of Fact (FOF) 2 determined that "Exodus Bail Bond, and Exodus Bail Bonds, LLC . . . all refer to the entity owned by Ms. Fernandez." HRS § 428-303 (2004) provides in relevant part that

> the debts, obligations, and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, are solely the debts, obligations, and liabilities of the company. A member or manager shall not be personally liable for any debt, obligation, or liability of the company solely by reason of being or acting as a member or a manager.

On the other hand, "a sole proprietorship has no legal identity apart from its owner." Credit Associates of Maui, Ltd., 98 Hawaiʻi at 465, 50 P.3d at 434. Here, the evidence relied on by the LIRAB show that the trade name was registered to Ms. Fernandez and not the LLC, and they were therefore separate entities. Thus, the LIRAB decision could not properly be made against Ms. Fernandez in her personal capacity for the actions or omissions of the LLC under the circumstances here. Despite FOF 2, we review the merits of the appeal insofar as COL 1 held that the decision was against "Janis Fernandez dba Exodus Bail Bond" and not the LLC.

As to the merits of Ms. Fernandez's appeal, we first conclude that the LIRAB did not err in not taking judicial notice of three documents (collectively, the Documents): (1) a Department of Commerce and Consumer Affairs (DCCA) Insurance Commissioner's Final Order, dated March 16, 2016; (2) a DCCA Insurance Division Notice of Intent to Impose Fines, Revoke

License, and Issue Cease and Desist, dated July 28, 2014; and (3) a Supreme Court of the State of Hawaiʻi Order of Disbarment in Office of Disciplinary Counsel v. Frank M. Fernandez, NO. SCAD-12-0000376 (Feb. 14, 2013). HRS § 91-10 (2012) sets forth evidentiary standards for contested cases, such as Ms. Fernandez's appeal to the LIRAB. HRS § 91-10(4) provides:

> Agencies may take notice of judicially recognizable facts. In addition, they may take notice of generally recognized technical or scientific facts within their specialized knowledge; but parties shall be notified either before or during the hearing, or by reference in preliminary reports or otherwise, of the material so noticed, and they shall be afforded an opportunity to contest the facts so noticed[.]

Similarly, Hawaii Administrative Rules (HAR) § 12-47-47 (eff. 1994) provides, in pertinent part:

> The [LIRAB] may take official notice of those matters as may be judicially noticed by the courts of the State. . . . Any party shall have an opportunity to contest the facts so noticed, within the time specified by the presiding member.

See also HAR § 12-47-41 (eff. 1994) ("The board shall not be bound by statutory and common law rules relating to the admission or rejection of evidence. The board may exercise its own discretion in these matters, limited only by considerations of relevancy, materiality, and repetition, by the rules of privilege recognized by law, and with a view to securing a just, speedy, and inexpensive determination of the proceedings."). Despite references during the LIRAB hearing to the proceedings revoking the insurance producer licenses of Mr. and Ms. Fernandez and Exodus Bail Bond, LLC, neither Ms. Fernandez nor the other parties requested that the LIRAB take judicial notice of the Documents and there is no indication that it was brought to the LIRAB's attention that the Documents addressed the ownership of the sole proprietorship doing business under the trade name Exodus Bail Bond. Under such circumstances, we find no error in the failure of the LIRAB to judicially notice the Documents *sua sponte*. See Paul's Elec. Serv., Inc. v. Befitel, 104 Hawaiʻi 412, 417, 91 P.3d 494, 499 (2004) ("HRS § 91-14(g)(6) provides that an agency's exercise of discretion will not be disturbed

unless '[a]rbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.'").

The LIRAB did not err in failing to further question Mr. Fernandez about the Documents and as to whether he owned the sole proprietorship doing business as Exodus Bail Bond. The LIRAB rules permit "[a]ny [LIRAB] member [to] question any party or witness[.]" HAR 12-47-42(c) (eff. 1994). Nonetheless, Ms. Fernandez had the right to question Mr. Fernandez further as to those issues, HRS § 91-9(c) (2012) and HAR 12-47-42(b) (eff. 1994), and as the appellant in the LIRAB hearing, maintained the burden to prove that the Department of Labor and Industrial Relations, Disability Compensation Division erred in determining that she was the owner of Exodus Bail Bond and the employer of Garcia. See HRS § 91-10(5) ("Except as otherwise provided by law, the party initiating the proceeding shall have the burden of proof, including the burden of producing evidence as well as the burden of persuasion. The degree or quantum of proof shall be a preponderance of the evidence."). The LIRAB rules do not alter this burden, and thus the LIRAB did not err in failing to further question Mr. Fernandez about the Documents or on the issue of ownership of Exodus Bail Bond. See Paul's Elec. Serv., Inc., 104 Hawai‘i at 417, 91 P.3d at 499.

Ms. Fernandez's contention that the LIRAB considered evidence not produced at the hearing in paragraphs "g"-"n" of the Summary of the Evidence subsection in the D&O, is without merit. The evidence cited in paragraphs "g"-"n"[5] were admitted into

---

[5]  Paragraphs "g" through "n" provide:

g.  By letter dated June 15, 2015, Anthony Fujii, Esq., on behalf of Exodus Bail Bonds, responded to the Department's request for a WC-1. Mr. Fujii stated that Claimant was never an "employee" of Exodus Bail Bonds, but, rather, was an independent contractor. The letter did not include any statement or other indication that Ms. Fernandez was not the principle of Exodus Bail Bonds.

h.  Quentin Lee of the Disability Compensation Division prepared a November 24, 2015 letter addressed to

evidence as SCF's Exhibits 1, 2, 3, 4, or otherwise included in the agency file available to the parties.  We note, however, that the LIRAB appears to have miscited the June 22, 2015 letter from Anthony Fujii, Esq., in evidence as SCF's Exhibit 1, in paragraph "g", as being a letter dated "June 15, 2015."  Nonetheless, the description of Anthony Fujii's letter contained in paragraph "g" is sufficient to discern that the LIRAB intended to reference the June 22, 2015 letter and there appears to be no other letter from Anthony Fujii in the record.  Therefore, Ms. Fernandez's substantial rights were not prejudiced and the error was harmless.  See HRS § 91-14(g) (providing that the court "may reverse or modify the decision and order [of the agency] if the substantial rights of the petitioners may have been prejudiced").

_____

> Janis H Fernandez
> dba: Exodus Bail Bond
> c/o Anthony Fujii, Esq.
> [address]

> i.  Mr. Lee's November 24, 2015 letter requested a WC-1.

> j.  In a memo dated January 4, 2016, the Disability Compensation Division identified Janis Fernandez as Claimant's employer.

> k.  A letter on file with the Department of Commerce and Consumer Affairs ("DCCA") dated May 10, 2011, states, "We have no objections and I give my consent to the registration of the [name Exodus Bail Bond].  I am authorized to give this consent on behalf of Exodus Bail Bond, LLC."  The letter purports to be signed by Ms. Fernandez as Manager of "Exodus Bail Bond, LLC."  At trial, Ms. Fernandez testified that she did not sign such letter.

> l.  A DCCA form, Application for Registration of Trade Name, identifies Ms. Fernandez as a sole proprietor and the registrant of the trade name "Exodus Bail Bond."

> m.  In a DCCA website printout, Ms. Fernandez is identified as the registrant of the trade name "Exodus Bail Bond" from May 12, 2011 to May 11, 2016.

> n.  A May 19, 2016 letter from the State of Hawaii, Department of Commerce and Consumer Affairs, Insurance Division confirmed Frank M. Fernandez, Janis Hu Fernandez, and Exodus Bail Bond, LLC had active "resident producer licenses" on October 1, 2014.

We now turn to SCF's appeal, in which SCF contends that the LIRAB erred in calculating the penalty assessed to Ms. Fernandez under HRS §§ 386-121 and 386-123, by calculating the penalty from the date of Garcia's work injury on October 1, 2014, instead of the date she began working for Ms. Fernandez.[6]

> The interpretation of a statute is a question of law reviewable *de novo*.  This court's construction of statutes is guided by the following rules:
>
>> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature which is to be obtained primarily from the language contained in the statute itself.  We must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose. When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute an ambiguity exists.  If the statutory language is ambiguous or doubt exists as to its meaning, courts may take legislative history into consideration in construing a statute.

Kauai Springs, Inc. v. Planning Comm'n of Cty. of Kauai, 133 Hawaiʻi 141, 163, 324 P.3d 951, 973 (2014) (quotation marks and citations omitted).  Pursuant to HRS § 386-121 (Supp. 2014),[7]

---

[6]  SCF does not contest that Garcia's employment was terminated on February 6, 2015.

[7]  HRS § 386-121(a) provides:

> **§386-121  Security for payment of compensation; misdemeanor.**  (a)  Employers, except the State, any county or political subdivision of the State, or other public entity within the State, shall secure compensation to their employees in one of the following ways:
>
>> (1)  By insuring and keeping insured the payment of compensation with any stock, mutual, reciprocal, or other insurer authorized to transact the business of workers' compensation insurance in the State;
>>
>> (2)  By depositing and maintaining with the state director of finance security satisfactory to the director of labor and industrial relations securing the payment by the employer of compensation according to the terms of this chapter;
>>
>> (3)  Upon furnishing satisfactory proof to the

9

"[e]mployers, except the State, any county or political subdivision of the State, or other public entity within the State, shall secure compensation to their employees[,]" "[b]y insuring and keeping insured the payment of compensation with any stock, mutual, reciprocal, or other insurer authorized to transact the business of workers' compensation insurance in the

director of the employer's solvency and financial ability to pay the compensation and benefits herein provided, no insurance or security shall be required, and the employer shall make payments directly to the employer's employees, as they may become entitled to receive the same under the terms and conditions of this chapter;

(4)     An employer desiring to maintain security for payment of compensation under this section shall file an application with the director on a form provided for this purpose together with the employer's most current audited annual financial statement;

(5)     Where an applicant for self-insurance is a subsidiary and the subsidiary cannot submit an independent current audited annual financial statement, an indemnity agreement approved as to form and content by the director shall be executed by the parent corporation of the subsidiary and submitted with its application;

(6)     Each self-insurance authorization shall be effective from the date of issuance until June 30 of each calendar year;

(7)     A notice of intention to cancel self-insurance shall be submitted in writing to the director within at least thirty days prior to the effective date of cancellation;

(8)     A self-insurance authorization may be revoked by the director for good cause shown upon notification in writing to the self-insurer;

(9)     By membership in a workers' compensation self-insurance group with a valid certificate of approval under section 386-194; or

(10)    By membership in a workers' compensation group insured by a captive insurer under chapter 431, article 19.

Any person who wilfully misrepresents any fact in order to obtain the benefits of paragraph (3) shall be guilty of a misdemeanor.

State" or using the other enumerated methods.  HRS § 386-123
(1993) provides, in relevant part:

> If an employer fails to comply with section 386-121, the
> employer shall be liable for <u>a penalty of not less than $250
> or of $10 for each employee for every day during which such
> failure continues</u>, whichever sum is greater, to be recovered
> in an action brought by the director in the name of the
> State, and the amount so collected shall be paid into the
> special compensation fund created by section 386-151.  The
> director may, however, in the director's discretion, for
> good cause shown, remit all or any part of the penalty in
> excess of $250, provided the employer in default complies
> with section 386-121.  With respect to such actions, the
> attorney general or any county attorney or public prosecutor
> shall prosecute the same if so requested by the director.

(Emphasis added.)  The plain language of HRS § 386-121 requires
an employer to "secure compensation to their employees," by
obtaining one of the enumerated forms of workers' compensation
coverage.  Thus, coverage should be obtained at the point when
the employee begins providing services for the employer and an
employer-employee relationship is created.[8]  The purpose of this
requirement is to shield employees from the consequences of work
injuries during the entire period of employment.  <u>See</u> <u>Travelers
Ins. Co. v. Hawaii Roofing, Inc.</u>, 64 Haw. 380, 385, 641 P.2d
1333, 1337 (1982) ("HRS §§ 386-121 through 128 constitute an
essential component of an independent statutory system of legal
relations designed to shield workers from the consequences of
work injuries.  For this part of the law ensures the payment of
compensation to injured workers.  The Director has a duty
thereunder of compelling employers who choose insurance as the
means of securing compensation payments to their employees to
maintain insurance coverage at all times." (citation omitted)).
As a result, under HRS § 386-123, the penalty assessed for
violation of HRS § 386-121 is calculated from the time the

---

[8]  HRS § 386-1 (1993 and Supp. 2014) defines an "employer," in
pertinent part, as "any person having one or more persons in the person's
employment" and defines "employment," in pertinent part, as "any service
performed by an individual for another person under any contract of hire or
apprenticeship, express or implied, oral or written, whether lawfully or
unlawfully entered into."  Further, an "employee" is defined in HRS 386-1 as
"any individual in the employment of another person."

employer-employee relationship begins, and continues for each employee for every day during which such failure to maintain workers' compensation coverage continues.

In this case, in COL 4,[9] the LIRAB calculated the penalty from the date of Garcia's work injury. COL 4 was therefore wrong. Ihara v. State Dep't of Land & Nat. Res., 141 Hawaiʻi 36, 41, 404 P.3d 302, 307 (2017) ("[T]the LIRAB's conclusions will be reviewed *de novo*, under the right/wrong standard."). The LIRAB never made a finding as to when Garcia's employment began. Rather, it only determined that Garcia was an employee of Ms. Fernandez at the time of her work injury. This case must be remanded for the LIRAB to make a finding as to when Garcia's employment began and to further determine the period during which Ms. Fernandez was in violation of HRS §§ 386-121 and 386-123.[10]

Based on the foregoing, we vacate COL 4 of the March 29, 2018 Decision and Order and remand the case for further proceedings consistent with this summary disposition order. The Decision and Order is affirmed in all other respects.

DATED: Honolulu, Hawaiʻi, June 4, 2020.

On the briefs:

Herbert B. K. Lau,
and Frances E. H. Lum,
Deputy Attorneys General,
for Insurance Carrier-
Appellee-Appellant.

Janis Fernandez,
Self-Represented, Employer-
Appellant-Appellee.

Charles H. Brower,
for Claimant-Appellee

/s/ Lisa M. Ginoza
Chief Judge

/s/ Derrick H. M. Chan
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge

---

[9] COL 4 provided: "4. The Board concludes that Employer is liable for a penalty payable to the [SCF] for failing to secure workers' compensation insurance in accordance with § 386-123, HRS, in the amount of $1,290.00."

[10] In light of our disposition of the D&O, we need not address SCF's challenge to the LIRAB's Order Denying Motion for Reconsideration.